The STATE of Ohio, Appellee,

v.

DAVIS, Appellant.

[Cite as: *State v. Davis* (1992), 81 Ohio App.3d 706.]

Court of Appeals of Ohio,
Washington County.

No. 91CA23.

Decided July 6, 1992.

708

*Atkinson & Burton* and *Nancy E. Brum,* for appellant.

*Paul G. Bertram III,* Washington County Assistant Prosecuting Attorney, for appellee.

HARSHA, Judge.

Geoffrey A. Davis appeals from a judgment of conviction and sentence rendered by the Washington County Court of Common Pleas upon a jury verdict finding appellant guilty of escape (R.C. 2921.34), grand theft of a motor vehicle (R.C. 2913.02) and aggravated burglary (R.C. 2911.11). Appellant was sentenced to serve one and one-half years on the conviction for escape, a felony of the fourth degree. He received a consecutive sentence of seven to twenty-five years on the conviction for aggravated burglary, an aggravated felony of the first degree. As appellant was on probation for a previous felony domestic violence conviction at the time of the offenses herein, these sentences were ordered to run consecutively to the sentence from that case. Appellant was not sentenced on the grand theft charge as, pursuant to

stipulations by the parties, the court found that charge to be an allied offense of similar import to the charge of aggravated burglary. Appellant raises the following assignments of error:

"I. The trial court abused its discretion in refusing to give the requested instruction on intoxication, which resulted in prejudicial error since the evidence did warrant an instruction on that issue.

"II. The trial court erred to the prejudice of appellant by allowing Dana Spencer to testify in the state's case-in-chief over objection of counsel, in violation of Evidence Rule 404B.

"III. The trial court committed prejudicial error by denying appellant's motions for acquittal which were made at the close of the state's case and at the close of the trial.

"IV. The verdict in appellant's case was erroneous because it was against the weight of the evidence presented at trial."

On November 15, 1990, the grand jury returned an indictment which charged appellant with the crimes noted above. Following appropriate pretrial motion practice and an initial mistrial, the case was tried on April 23 and 24, 1991, at which time the following pertinent evidence was introduced.

Ohio State Patrolman Stephen Belyus testified that he stopped appellant on October 30, 1990 at approximately 12:25 a.m., because he believed appellant was driving while intoxicated. The trooper administered standard field tests, which appellant failed. Appellant was told he was under arrest and was taken to the Ohio State Highway Patrol post in Washington County so that a breath test could be administered. Since appellant was belligerent, he was handcuffed. They arrived at the post at approximately 1:00 a.m. The handcuffs were removed so that the BAC Verifier test could be administered. Just prior to the administration of the test, appellant was again informed that he was under arrest. Appellant's breath test indicated his breath alcohol content was .15 percent.

Belyus informed appellant that he could be released into the custody of a sober adult, but that appellant would first have to sign a recognizance bond at the Washington County Jail/Sheriff's Office. Appellant again became belligerent when he heard he would have to go to the sheriff's office. He became confrontational and the trooper warned him that he would again be handcuffed if he did not control himself. Appellant did so. Despite numerous attempts, appellant was unable to contact anyone to pick him up. The trooper took appellant to the cruiser in order to transport appellant to the sheriff's office. Belyus went to the driver's side of the vehicle and appellant went to the passenger's side. Appellant was not handcuffed. As Belyus unlocked the

car doors electrically from the driver's side, appellant fled across State Route 7 toward the Ohio River.

Judy Mundo testified that she lives on the bank of the Ohio River approximately one-half mile from the patrol post. Her home has a garage and workshop located in its basement. On October 29, 1990 she returned home from a shopping excursion at approximately 10:30 p.m. She parked her car in the garage and, as was her habit, left the keys in the ignition. At approximately 2:00 a.m. her dog awakened her and her husband, Mark. They dismissed the barking as meaningless. Roughly one-half hour later, she noticed a state patrol cruiser in the driveway. At approximately 6:00 a.m., her husband discovered that the garage door was open and Mrs. Mundo's car was missing. Also, a pair of coveralls and a halloween wig were missing from the house. Her husband testified that several, but not all, of the phone lines in the house had been cut. He also testified that the basement contained many tools worth thousands of dollars.

Mr. and Mrs. Mundo's son, Mark, also testified. His alarm clock normally goes off at 4:10 a.m. and he gets up at approximately 5:00 a.m. On October 30, 1990 at approximately 4:30 a.m., he heard a car start in the basement garage. The car exited the garage with its transmission whining as if it was being driven quickly in reverse. He assumed his father was leaving for work early.

Some of the most damaging testimony presented by the state was elicited from James Hall. He lives in Henderson, West Virginia. Three or four days prior to the previously mentioned events, appellant told Hall that he (appellant) was wanted by the "Marietta cops" for a problem involving his old girlfriend. On October 30, 1990, Hall was in Henderson preparing to go hunting when appellant pulled up in his car. Appellant asked Hall if he wanted to buy a little brown car for $50. Appellant said the car was "hot." He said he had been picked up by "a cop" and that he knocked the cop "upside the head" and took off running. He ran two to three blocks when he came across the little brown car, which had the keys in it. He got in the car and took off. Hall refused to buy the car because it was stolen. Appellant threw Hall the keys and told him to get rid of the car. Hall turned the car over to the Mason County, West Virginia Sheriff's Office.

In addition to the foregoing, the state presented testimony regarding the search for appellant that was instituted after he fled the patrol post. It lasted from roughly 2:00 a.m. to 4:30 a.m. and thoroughly covered the area surrounding the post. It was conducted by numerous individuals including Dana Spencer, appellant's probation officer.

Appellant testified that at 6:00 p.m. on October 29, 1990, he began drinking in a bar in Belpre, Ohio. While he was there, Robin Mendez, his live-in girlfriend, arrived in an apparent attempt to check up on him. Appellant left the bar and drove away. He was drunk at the time. Appellant's version of his drunk driving arrest is substantially similar to that told by Belyus. Appellant contends, however, that he was cooperative throughout the ordeal. He also contends that he was never told he had to go to the sheriff's office to sign a recognizance bond.

Appellant testified that when he left the patrol post he was under the impression he was free to go. On a previous occasion he had been released at the post. He testified that he and Belyus walked to the door together; Belyus stood in the doorway and talked to the dispatcher and appellant walked away. He was not handcuffed; Belyus had no control over him and he thought he was being released.

After appellant left the post, he testified, he walked down State Route 7 toward the house of a friend. As he was passing the Reno Motel, he got a ride from an unknown individual at the motel. He was taken to the Evergreen truck stop where he got a cup of coffee and spent an hour in a phone booth attempting to contact someone to pick him up. He intermittently sat outside on a curb and once while he was there, Robin Mendez drove up in the little brown car wearing a wig and coveralls. She gave him a ride to Henderson, West Virginia.

Appellant stated that he had no conversation with Hall. He had never entered the Mundos' house and had never stolen their car. He admitted having missed two or three meetings with his probation officer but denied knowing there was a warrant out for his arrest. Finally, he admitted on cross-examination that he was never told he was free to leave the post, but that it was insinuated by the "nice" way in which the troopers treated him.

 Appellant's first assignment of error asserts that the trial court abused its discretion by refusing to instruct the jury on voluntary intoxication as a defense to the escape charge, as the evidence warranted such an instruction. Generally, voluntary intoxication is not a defense to any crime. *State v. Fox* (1981), 68 Ohio St.2d 53, 54–55, 22 O.O.3d 259, 259–260, 428 N.E.2d 410, 411–412. However, "[a]n exception to the general rule has developed, where specific intent is a necessary element, that if the intoxication was such as to preclude the formation of such intent, the fact of intoxication may be shown to negative this element." *Id.* at 55, 22 O.O.3d at 260, 428 N.E.2d at 411–412; *State v. Cooey* (1989), 46 Ohio St.3d 20, 26, 544 N.E.2d 895, 906. The crime of escape under R.C. 2921.34 is a specific intent crime; thus, voluntary intoxication can serve as a defense to negate the specific

intent element.[1] *Id.* That having been established, we now turn our attention to the question of whether the trial court properly refused the requested instruction on voluntary intoxication despite the applicability of that defense to the crime of escape.

■■■ The general rule as to when a special instruction in a criminal case must be given was recently reiterated in *State v. Sneed* (1992), 63 Ohio St.3d 3, 9, 584 N.E.2d 1160, wherein the Supreme Court held:

"We have previously stated that 'it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge.' *State v. Scott* (1986), 26 Ohio St.3d 92, 101, 26 OBR 79, 87, 497 N.E.2d 55, 63."

Upon review under the general rule, an appellate court must determine whether "the evidence presented by [defendant], if believed by a properly instructed jury, would support an acquittal on the grounds of [the defense upon which an instruction was sought.]" *State v. Williford* (1990), 49 Ohio St.3d 247, 252, 551 N.E.2d 1279, 1284; see, also, *id.* at 253, 551 N.E.2d at 1284 (Resnick, J., dissenting). This general standard of review, while holding true in most cases, does not apply to the case *sub judice.* The Supreme Court has announced a special rule with respect to instructions on the defense of voluntary intoxication. This rule is based upon the suspect nature of that defense. Upon that basis, an abuse of discretion standard is applied.

■ In *Fox, supra,* the court was also faced with the issue of whether the trial court erred by refusing to instruct the jury on the possibility that voluntary intoxication had prevented the formation of the specific intent to commit the crime involved. The court stated the following:

" ' * * * [W]hen we admit evidence of intoxication to rebut * * * a charge of deliberation and premeditation, * * * we think we have gone far enough; and that, looking to the practical administration of the criminal law, a due regard to the public safety requires that the mere question of malice should be determined by the circumstances of the case, aside from the fact of

---

1. R.C. 2921.34(A) provides:
 "No person, knowing he is under detention or being reckless in that regard, shall *purposely* break or attempt to break such detention, or *purposely* fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement." (Emphasis added.)
 R.C. 2901.22(A) provides:
 "A person acts purposely when it is his *specific intention* to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his *specific intention* to engage in conduct of that nature." (Emphasis added.)
 Thus, escape is a specific intent crime.

intoxication, as in other cases.' *Id.* [*Nichols v. State* (1858), 8 Ohio St. 435, 439.]

"This court's denial of a right to a jury charge in *Nichols* was based on a deep seated distrust of the reliability of such evidence:

" 'Intoxication is easily simulated. It is often voluntarily induced for the sole purpose of nerving a wicked heart to the firmness requisite for the commission of a crime soberly premeditated, or as an excuse for such crime.' *Id.* Rather than impose a strict rule of criminal procedure, we left the trial judge with discretion to handle the evidence and submit it to the jurors in the appropriate manner." *Id.*, 68 Ohio St.2d at 56, 22 O.O.3d at 261, 428 N.E.2d at 412.

This holding was followed in *State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, wherein the court held:

"It is within the sound discretion of the trial court to determine whether the evidence presented at trial is sufficient to require a jury instruction on intoxication where the accused claims that his inebriated condition negated the mental state required as an element of the crime charged." *Id.*, at paragraph two of the syllabus.

Thus, in cases such as this, based upon the suspect nature of voluntary intoxication as a defense, the trial court is given greater deference and an "abuse of discretion" standard is applied. An "abuse of discretion" connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude by the court in reaching its decision. *Id.*, at 68, 541 N.E.2d at 446; *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 170; *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715, 719.

In *Wolons*, the court reviewed the record and determined that the defendant therein "was not so intoxicated that he was not fully aware of the events taking place around him." *Wolons, supra*, 44 Ohio St.3d at 69, 541 N.E.2d at 447. The court therein stated that even assuming the defendant's blood alcohol content was .24 percent, his level of inebriation fell "short of negating a conscious awareness of the circumstances and events that transpired on the night of the [crime]." *Id.* Thus, in determining whether the decision below was arbitrary, unreasonable or unconscionable, we pay particular attention to appellant's awareness of the circumstances and events taking place around him.

Appellant testified that he was stopped by Belyus while he was travelling from a bar in Belpre to Gallipolis. He remembered the trooper shining the cruiser's spotlights on his car. He testified that upon request, he gave the

trooper his license and registration. He testified that the trooper asked him to get out of the car and perform sobriety tests. He recalled that he was not asked to walk a line because there was no line present due to road construction. He remembered the trooper telling him he was under arrest for OMVI and placing him in handcuffs. The trooper put him in the front seat of the cruiser, strapped his seat belt and drove him to the patrol post. He recalled the trooper removing him from the cruiser. He remembered that the handcuffs were removed and he blew into the BAC Verifier. He remembered turning over his personal effects to Belyus. He testified as to his conversations with the trooper regarding his release. He testified that he knew he had a friend who lived within two miles of the post. He recalled being in the post "at least a half an hour." He recalled radio traffic coming into the post. He testified that while he attempted to contact someone to pick him up, the trooper did paperwork on "his clipboard with [appellant's] license on it * * * and the ticket." He also recalled his wallet being returned to him while his pocket knife was not.

Appellant's testimony indicated that he was fully aware of the facts and circumstances occurring around him. It further indicated that he was properly oriented regarding his location and the passage of time. Under these circumstances, we cannot hold that the trial court's decision (not to instruct the jury on the possibility of voluntary intoxication negating appellant's specific intent) was unreasonable, arbitrary or unconscionable. As we find no abuse of discretion, appellant's first assignment of error is overruled.

 In appellant's second assignment of error he asserts that the trial court erred by allowing appellant's probation officer to testify regarding appellant's failure to report to the probation department and for intermittent confinement, as such testimony constituted evidence of appellant's prior bad acts. Such evidence, he contends, is admissible only in rebuttal, pursuant to *State v. Snowden* (1976), 49 Ohio App.2d 7, 15, 3 O.O.3d 92, 97, 359 N.E.2d 87, 93. We reject this contention.

In part, Evid.R. 404 provides:

"Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

R.C. 2945.59 is in accordance with this rule. *State v. Broom* (1988), 40 Ohio St.3d 277, 281, 533 N.E.2d 682, 688. It provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C. 2945.59.

In construing the rule and the statute, the Supreme Court held:

"Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. (*State v. Burson* [1974], 38 Ohio St.2d 157, 158–159, 67 O.O.2d 174, 175, 311 N.E.2d 526, 528; *State v. DeMarco* [1987], 31 Ohio St.3d 191, 194, 31 OBR 390, 392, 509 N.E.2d 1256, 1259, followed.) The rule and the statute contemplate acts which may or may not be similar to the crime at issue. *If the other act does in fact 'tend to show' by substantial proof any of those things enumerated, such as proof of motive,* opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, *then evidence of the other act may be admissible. (State v. Flonnory* [1972] 31 Ohio St.2d 124, 126, 60 O.O.2d 95, 96–97, 285 N.E.2d 726, 729, followed.)" (Emphasis added.) *Broom, supra,* at paragraph one of the syllabus.

■ The evidence that appellant failed to report to his probation officer and to the Washington County Jail for intermittent confinement was admitted below to show appellant's motive for the escape—a permissible purpose for admission under both Evid.R. 404(B) and R.C. 2945.59. The state introduced the evidence in its case-in-chief in order to demonstrate that appellant escaped because he knew that he would be incarcerated if he were taken to the Washington County Jail to sign a recognizance bond. Preliminary determinations regarding the admissibility of evidence are the province of the trial court, Evid.R. 104(A); they will not be overturned upon review absent an abuse of discretion. See *State v. Heinish* (1990), 50 Ohio St.3d 231, 234, 553 N.E.2d 1026, 1030; *State v. Cutshaw* (Mar. 6, 1992), Washington App. No. 91CA8, unreported, 1992 WL 42788. As the testimony was unquestionably indicative of appellant's alleged motive for the escape, we cannot say the court unreasonably, arbitrarily or unconscionably admitted it; thus there was no abuse of discretion in that respect. See *Wolons, supra,* 44 Ohio St.3d at 68, 541 N.E.2d at 446; *Moreland; Montgomery;* and *Xie, supra.* The evidence did " 'tend to show' by substantial proof" appellant's motive.

As for appellant's suggestion that such evidence is admissible only in rebuttal, again, we disagree. We find no such requirement in either the statute or the rule. As for *Snowden*, we note that the portion of the opinion dealing with this question is *dicta*. Further, we are not bound by *stare decisis* to follow that opinion. It is apparent that for some of the purposes for admitting evidence of other acts, as set forth in Evid.R. 404(B) and R.C. 2945.59 (*e.g.*, "absence of mistake or accident"), it is more appropriate that such evidence be presented in rebuttal after the defendant has asserted a defense (*e.g.*, mistake or accident.) However, we do not find that to be true in all cases as the facts of this case exemplify. Accordingly, we hold that the trial court did not abuse its discretion by admitting evidence pursuant to Rule 404(B) and R.C. 2945.59 during the state's case-in-chief. Appellant's second assignment of error is not well taken.

Appellant's third assignment of error asserts that the trial court improperly denied appellant's motions for acquittal pursuant to Crim.R. 29. Appellant has asserted no argument with respect to denial of these motions as to the escape charge. Pursuant to App.R. 12(A), we disregard any error that might have occurred in the denial of the Crim.R. 29 motions concerning the escape charge. As for the aggravated burglary charge, appellant claims that circumstantial evidence is all that linked him to the crime and, at best, such evidence only showed appellant received stolen property.

Appellant's assignment of error questions the sufficiency of the evidence to sustain a conviction for aggravated burglary. In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Supreme Court held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" *Jenks, supra,* at paragraph two of the syllabus; see, also, *State v. Mills* (1992), 62 Ohio St.3d 357, 368, 582 N.E.2d 972, 983.

First, we do not agree that *only* circumstantial evidence links appellant to the aggravated burglary. However, even if that were true, that alone would not justify overturning appellant's conviction. In *Jenks,* the Supreme Court held that "[c]ircumstantial evidence and direct evidence *inherently possess the same probative value* and therefore should be subjected to the same standard of proof." (Emphasis added.) *Jenks, supra,* at paragraph one

of the syllabus, emphasis added. That having been said, we now examine the evidence admitted at trial to determine whether such evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.

At trial, Judy Mundo testified that on the morning appellant escaped, her car was stolen from the garage in the basement of her home, located one-half mile from the patrol post. Also stolen were a wig and a pair of coveralls. She testified that shortly after appellant reportedly escaped, she and her husband were awakened by the family dog's barking. Her husband corroborated this account. James Hall testified that appellant admitted escaping from "a cop" and stealing Mrs. Mundo's car to further that escape. Construing this testimony, along with the remainder of the evidence presented by the state, in a light most favorable to the state, we hold that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. See *Jenks, supra,* at paragraph two of the syllabus; *Mills, supra.* Accordingly, appellant's third assignment of error is overruled.

Appellant's fourth assignment of error asserts that appellant's convictions were against the manifest weight of the evidence. With respect to the escape conviction, appellant contends there was no evidence that appellant was in "detention" as the trooper was taking him for release on bond. He also contends that he established an irregularity in detention by a preponderance of the evidence as he was not handcuffed and felt free to leave at the time he did so. He argues that the aggravated burglary conviction was against the manifest weight of the evidence because there was no physical evidence linking appellant to the crime.

Upon review of a claim that a jury verdict is against the manifest weight of the evidence, our duty is to review the record "to determine whether there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt." *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523 at paragraph four of the syllabus. We will not reverse a conviction "where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus; *State v. Johnson* (1991), 58 Ohio St.3d 40, 42, 567 N.E.2d 266, 268.

R.C. 2921.34(A) and (B) provide:

"(A) No person, knowing he is under detention or being reckless in that regard, shall purposely break or attempt to break such detention, *or purposely fail to return to detention,* either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.

"(B) Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, is not a defense to a charge under this section if the detention is pursuant to judicial order or in a detention facility. *In the case of any other detention, irregularity or lack of jurisdiction is an affirmative defense only if either of the following occurs:*

"*(1) The escape involved no substantial risk of harm to the person or property of another.*

"(2) The detaining authority knew or should have known there was no legal basis or authority for the detention." (Emphasis added.)

"Detention," as the term is used in R.C. 2921.34 is defined by R.C. 2921.01(E) as follows:

" 'Detention' means *arrest,* or confinement in any facility for custody of persons charged with or convicted of crime or alleged or found to be delinquent or unruly, or detention for extradition or deportation. For a person confined in a county jail who participates in a county jail industry program pursuant to section 5147.30 of the Revised Code, 'detention' includes time spent at an assigned work site and going to and from the work site. *Detention does not include supervision of probation or parole, nor constraint incidental to release on bail.*" (Emphasis added.)

▆ We first review appellant's contention that the finding of "detention" was contrary to the manifest weight of the evidence, as appellant was constrained "incidental to release on bail." Trooper Belyus testified at trial that it is standard procedure to immediately release a D.U.I. arrestee to a sober adult if the arresting officer believes the arrestee will appear for court. Otherwise, the arrestee is first required to post bond. However, under no circumstances would the arrestee be immediately released without a sober adult present to pick the arrestee up. Belyus testified that he felt appellant was an appearance risk and thus he required appellant to sign a recognizance bond. Belyus, Trooper Magill and appellant all testified that appellant was unable to contact a sober adult who would come to pick appellant up. Appellant was on his way to the sheriff's office to post bond when he fled. Magill indicated that no one told appellant or insinuated that he was free to go. Belyus testified that appellant was never released from arrest and was in custody when he fled.

▆ Under these circumstances, we find substantial evidence upon which the trier of fact could reasonably conclude that appellant was in detention when he left the patrol post. It is true that Belyus was taking appellant to the county jail to sign a recognizance bond. However, appellant's constraint

was not "incidental to release on [bond.]" R.C. 2921.01(E) The evidence indicated that appellant was under arrest and would not be released until a sober adult was present to accompany him. As there was a condition precedent to appellant's release other than the signing of the recognizance bond, the trier of fact properly found that appellant's detention was not "incidental" to release on bond. The finding of "detention" was not contrary to the manifest weight of the evidence.

We now review appellant's contention that the verdict of guilty on the escape charge was contrary to the manifest weight of the evidence because appellant proved by a preponderance of the evidence the affirmative defense of an irregularity in detention under R.C. 2921.34(B)(1). Appellant contends that the fact he was not handcuffed constitutes an "irregularity * * * in maintaining detention."

Initially, we note that it was uncontroverted that appellant was not handcuffed when he fled the patrol post. Further, Belyus testified that he was not physically harmed by appellant, nor was any property at the post. That having been said, we hold that the failure to handcuff appellant prior to transporting him to the county jail does not constitute an irregularity in detention.

In construing R.C. 2921.01(E), the Supreme Court held:

"A person is under 'detention,' as that term is used in R.C. 2921.34, when he is arrested and the arresting officer has established control over his person." *State v. Reed* (1981), 65 Ohio St.2d 117, 19 O.O.3d 311, 418 N.E.2d 1359, syllabus.

The "control" necessary to establish detention need not be effected by physical restraint. *State v. Shook* (1975), 45 Ohio App.2d 32, 34–35, 74 O.O.2d 71, 72–73, 340 N.E.2d 423, 425–426; *State v. Stemen* (Mar. 10, 1989), Allen App. No. 1–87–26, unreported, 1989 WL 22034. In *Shook* the court held:

"When the simple word 'detention' is used, there may be physical restraint but it is not essential to the detention, which in its abstract form connotes merely the state or status of being detained in some form of legal custody." *Shook, supra* at 35, 74 O.O.2d at 72, 340 N.E.2d at 425. See, also, *Stemen, supra,* wherein the court held at 8 that "the fact that the defendant was not subject to any physical restraint * * * is immaterial."

In R.C. 2921.34, there is evidence that the General Assembly did not intend to require a detainee to break from physical restraints in order that a break in detention occur. It also constitutes an escape for one to "purposely fail to return to detention." This presupposes that one is not under physical restraint. An irregularity in detention would also be an affirmative defense to a

charge of escape allegedly committed in this manner. Thus, as physical restraint is not a required element of detention, its absence, as occurred in the facts of this case, does not constitute an irregularity in detention. Appellant failed to prove the affirmative defense by a preponderance of the evidence and thus the verdict regarding escape was not contrary to the manifest weight of the evidence.

Finally, appellant argues that the guilty verdict on the aggravated burglary charge was contrary to the manifest weight of the evidence because there was no physical evidence providing a nexus between appellant and the Mundos' residence. Having reviewed all the evidence, particularly that discussed in relation to the third assignment of error, we hold that there was substantial evidence from which the trier of fact could have found all the elements of aggravated burglary proven beyond a reasonable doubt. Accordingly, appellant's fourth assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE and GREY, JJ., concur.