OPINION
Defendant-appellant David R. Brown appeals from his conviction and sentence for two counts of Sexual Imposition. He contends that the trial court erred by allowing references and testimony to other bad acts of defendant, that the trial court erred in its instruction to the jury concerning these other bad acts, that the trial court erred by overruling an objection to the prosecutor's reference to the other bad acts during closing argument, that the trial court erred by not dismissing the complaint regarding one alleged victim, because there was insufficient corroboration of her complaint, that the conviction is against the manifest weight of the evidence, and that the trial court improperly admonished defense counsel in the presence of the jury on one occasion. We have reviewed the entire transcript, and although the evidence is conflicting, we conclude that Brown's conviction is not against the manifest weight of the evidence. The alleged offenses involved an improper touching of the victims' breasts for the purpose of sexual gratification. The State's own evidence suggested the possibility that these touchings were inadvertent. Consequently, testimony by other women that, under similar circumstances, Brown had touched their breasts and other erogenous zones on numerous occasions was relevant and probative to show that the charged touchings were not inadvertent on Brown's part. The probative value of this evidence outweighed its prejudicial impact. Although the trial court supplemented the standard jury instruction concerning other acts evidence, her instructions as a whole, including an additional instruction she gave following Brown's objection, did not erroneously instruct the jury concerning the proper use for which other acts testimony could be considered. The prosecutor, in her closing argument, did not improperly state the use for which the other acts testimony could be considered.
Finally, we have reviewed the entire transcript of this case, and we conclude that the trial judge, the Honorable Susan L. Goldie, conducted the trial in an exemplary manner. We conclude, therefore, that even if her brief, minor admonition to defense counsel concerning the proper way of addressing one of the State's witnesses, in the presence of the jury, was improper, there is no reasonable likelihood that it would have prejudiced the jury. For all the foregoing reasons, the judgment of the trial court isAffirmed.
 I
On August 3, 1998, school bus inspections were performed in Xenia, Ohio. Brown, an Ohio State highway patrolman, participated in these inspections. The procedure involved a school bus driver driving a bus up to the place where the inspections were being conducted, and using the various signals with which the bus was equipped, on direction, while someone outside the bus verified that the signals were working properly. After this phase of the testing was completed, the bus driver would exit the bus, and a state trooper, one of whom was Brown, would enter the bus, sit in the driver's seat, and perform additional testing. Each of the alleged victims in this case was a school bus driver who participated in the August 3, 1998, inspections. One of these, Cindy Hester, testified concerning two incidents involving Brown. Her description of the first of these incidents is as follows:
Q. And what happened?
 A. The first time when I went to get off the bus, he [Brown] just brushed me with his hand on my left breast and I honestly thought it was an accident.
 Q. When you say he brushed you with his left hand, does that mean his hand did not rest on your left breast?
A. No, it did not.
* * * *
 Q. Okay, Now, did you just get off the bus and not say anything?
A. Yes, I did.
Q. Did the defendant say anything to you?
A. No, he did not.
Although Hester concluded that this touching was accidental, she did mention to her boss, Laura Smith, that Brown had touched her breast.
For a while, Hester felt uncomfortable about driving any more buses up to be inspected. However, she eventually decided that what had happened had been an accident, and she drove another bus up to be inspected. She described what happened on this occasion as follows:
Q. Can you describe this incident for the Court?
A. He got up on the bus.
Q. When you say "he," who are you talking about?
 A. Mr. Brown got up on the bus. And as I was getting up out of my seat, he came in from behind me and put his right hand over my right shoulder and placed his hand on my right breast.
* * * *
 A. When I got up out of the seat — I'm sitting. Here is the steering wheel. I got up this way and he was standing with like my shoulder against to his front.
Q. Okay. And what did the defendant do at that point?
 A. He came right down from behind, his hand over my right shoulder.
Q. Okay.
A. He just came down.
 Q. And did he touch you when his hand came over your right shoulder?
A. Yes.
Q. How did he touch you?
A. He just slid his hand down.
Q. And did his hand touch your breast?
A. Yes.
Q. And how long was his hand on your breast?
A. No time.
* * * *
Q. Did he pause?
 A. Okay, he just — it was just all one motion. It just — and then, of course, you know, my natural reaction was just to — I jerked my shoulder and then right down the steps.
* * * *
 Q. Now, when you say he was standing off to the side, could it have been he possibly had brushed into your chest?
 A. No, he came — I can remember he came over my shoulder, over my right shoulder.
Q. All right. Did you say anything —
A. No.
Q. — to the defendant at that time?
A. No.
Q. Did he say anything to you?
A. No.
 Q. Okay. What did you proceed to do then after you jerked your shoulder back?
A. I went down the steps.
 Q. Thank you. If you want to have a seat. Now, when you went down the steps, did you mention the second incident to anyone.
 A. Well, Dave Johnson, the mechanic, was standing — he was standing right up on the steps when I came down the steps. He was right there.
Q. Did you say anything to Mr. Johnson?
A. Yes, I did.
Q. And what did you say to him?
 A. He wanted — you want to exactly — know exactly what I said?
Q. Yes.
 A. I said, "Dave, you wouldn't believe what he fucking did to me."
* * * *
 Q. Was there anyone else standing outside of the bus when you came on or when you got off the bus?
 A. Yes, I went straight over to where Laura was sitting.
 Q. Okay. Did you say anything to Laura about this incident?
A. Yes, I did.
Q. Okay. And what did you say to Laura?
 A. I'm not doing it again. I said I'm not going back on that bus. Don't even ask me.
Terry Muterspaw was another driver that day who was driving buses up to be inspected. She described her encounter with Brown as follows:
 A. Okay. He [Brown] was done on the outside and I was coming — ready for him to get in the bus to do what he does on the inside. And I was getting up out of my seat and he was coming up the stairs on the bus and he grabbed my breast.
* * * *
 Q. And how far — let me rephrase that. When you said you made physical contact with him, exactly what part of your bodies touched?
 A. He touched my breast and then kind of turned me towards him.
 Q. You said he sort of turned you towards him. How far did your body move?
 A. Well, just — not a large amount but just a small amount. And then I kind of pushed and then went down the steps.
* * * * *
 Q. So after he touched your breast, sort of turned you around and you pushed, did he say anything to you?
A. No.
Q. Did you say anything to him?
A. No.
Q. Why is it that you didn't make a comment to him?
A. I just wanted to get off the bus.
* * * * *
 Q. All right. Did you make any statements when you got off the bus to anyone?
A. Yes.
Q. Okay.
A. To my boss.
 Q. And how long was it from the time that you got off the bus until you made a statement to your boss?
A. Probably as I was coming down the last step.
 Q. So would it be fair to say you're still on the bus when you made a statement to your boss?
 A. Maybe. I don't know if I was on the last step or I'm sure quite a few people were around the bus.
Q. And what did you say?
A. That son of a bitch better keep his hands off me.
* * * *
 Q. Now, do you agree with me on a couple things? When you two met on this day and there was the touching — I've seen different times you call it a touching and a grabbing. Which was it, a touching or a grabbing?
A. He put his hand on my breast.
Q. Was it a palm open like this?
 A. No, it was enclosed. He got it and closed it and I pushed.
Brown was charged with two counts of Sexual Imposition. Following a jury trial, he was convicted as charged. From his conviction and sentence, Brown appeals.
 II
Brown's First and Second assignments of error are as follows:
 THE TRIAL COURT ERRED BY PERMITTING THE PROSECUTOR TO IMPROPERLY COMMENT REGARDING OTHER ACTS IN HER OPENING STATEMENT AND FURTHER BY ADMITTING OTHER ACTS TESTIMONY.
 OTHER ACTS TESTIMONY OF A SEXUAL NATURE IS SO PREJUDICIAL THAT ITS POTENTIAL FOR HARM OUTWEIGHS ITS RELEVANCE.
Brown moved in limine to exclude evidence that he had touched other women inappropriately. This motion was overruled, and testimony was admitted on those lines. At all appropriate times, Brown objected to the admission of this evidence.
Brown relies on R.C. 2945.59 and Evid.R. 404(B) for the proposition that this evidence should have been excluded. Evid.R. 404(B) provides as follows:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
R.C. 2945.59 is comparable. Neither party suggests any material distinction between the two provisions.
The State argues, and we agree, that evidence of Brown's having touched other female school bus drivers on their breasts or buttocks, when boarding the bus to take the driver's place in the driver's seat, is material to the issue of intent; that is, it was material to show that the touches forming the basis for the charged offenses were intended by Brown, and were not merely the result of a mistake or accident.
 The evidence submitted by both parties tended to show that the quarters within the bus were somewhat tight. The jury had an opportunity to view a school bus both before any testimony was taken, and again after all of the testimony was in. In her closing argument, the prosecutor conceded that the area within the bus traversed by Brown and each driver, respectively, was small enough that only two small individuals would have been able to do so without probably coming into physical contact somewhere. The prosecutor's remark in closing argument implicitly conceded that it would not be correct to characterize Brown and each victim, respectively, as being that small in stature.
It would be immediately apparent to any lawyer called upon to prosecute or defend this case, having become familiar with the testimony likely to be elicited at trial, that the issue was going to be whether Brown's touching the two complaining witnesses' breasts was intentional, or merely accidental. That, indeed, was the focus of the trial, and dominated closing argument. Under these circumstances, the probative value of the evidence that he touched other women inappropriately under similar circumstances cannot be denied. Brown was afforded the opportunity, and took it, to offer evidence that other female bus drivers, under similar circumstances, were not touched inappropriately.
We conclude that the evidence of the other touchings was probative on the issue of whether the charged touchings were accidental, and its probative value outweighed any prejudicial, inflammatory, effect that this testimony would likely have had upon the jury.
Brown argues further, however, that "there is substantial authority holding that `other acts' testimony is more appropriately presented in rebuttal after the defendant has asserted a defense," citing State v. Davis (1992), 81 Ohio App.3d 706,717; State v. Miller (Oct. 31, 1997), Montgomery App. No. 15552, unreported; and State v. Taylor (Dec. 4, 1987), Meigs App. No. 381, unreported.
In citing State v. Davis, supra, Brown directs our attention specifically to page 717 of that opinion, in which the court held:
 As for appellate's suggestion that such evidence [of other bad acts] is admissible only in rebuttal, again, we disagree. We find no such requirement in either the statute or the rule. As for [State v.] Snowden [(1976) 49 Ohio App.2d 7], we note that the portion of the opinion dealing with this question is dicta.
 Further, we are not bound by stare decisis to follow that opinion. It is apparent that for some other purposes for admitting evidence of other acts, as set forth in Evid.R. 404(B) and R.C. 2945.59 (e.g., "absence of mistake or accident") it is more appropriate that such evidence be presented in rebuttal after the defendant has asserted a defense (e.g., mistake or accident). However, we do not find that to be true in all cases as the facts of this case exemplify. Accordingly, we hold that the trial court did not abuse its discretion by admitting evidence pursuant to Rule 404 (B) and R.C. 2945.59 during the state's case-in-chief. Appellant's second assignment of error is not well taken.
In the case before us, the evidence presented by the State in its case-in-chief suggested the possibility that Brown's inappropriate touchings of his victims might have been accidental. Accordingly, we conclude that the State was not required to wait until after the defense had put in its case-in-chief before attempting to rebut that inference with proper evidence of other similar acts. Otherwise, Brown might have chosen, as a strategy, to rest without presenting any evidence, and then argue to the jury that the State had failed to prove, beyond reasonable doubt, that the touchings were other than accidental and inadvertent. The State would then never have had the opportunity to rebut the inference, suggested by its own evidence, that the touchings might have been accidental and inadvertent with the testimony concerning the inappropriate touchings of other women under similar circumstances.
In State v. Miller, supra, the issue was presented in the following context:
 Appellee also submits that the evidence [of prior bad acts] tended to show a knowledge of cocaine that offset Wilson's defense that he merely found the bag without knowing what was in it. However, the testimony could have little relevance in that regard during the State's case in chief, before the defendant had established his defense through testimony.
In that case, unlike the case before us, the defendant's defense of lack of knowledge could not reasonably have been inferred from the State's evidence in its case-in-chief. One would naturally assume that a person carrying a bag of crack cocaine concealed in the crotch of the person's pants (the factual circumstances in that case) would have known what was in the bag.
Finally, in State v. Taylor, supra, although Judge Grey, in the lead opinion, expressed his opinion that evidence of the absence of mistake or accident (that case involved a fatal shooting) is most generally presented in rebuttal rather than in the case in chief, he notes at the end of his opinion:
 In light of the opinion of Stephenson, J., concurring in part and dissenting in part, and the dissent of Abele, J., assignment of error two [involving the evidence of prior bad acts] is overruled.
In his opinion in that case, Judge Stephenson clearly opines that the State is not required to wait until its rebuttal case to present evidence of other bad acts to show the absence of mistake or accident. Accordingly, it appears that Judge Grey, although the author of the lead opinion, was in the minority on this issue in Taylor.
We conclude that the evidence of Brown's prior inappropriate touchings of women under similar circumstances is probative of the fact that those touchings were not merely accidental, that the probative value of that evidence outweighs the potentially prejudicial impact of its improper consideration by the jury, and that the State was not required, under the circumstances of this case, to wait until its rebuttal to present this evidence. Accordingly, Brown's First and Second assignments of error are overruled.
 III
Brown's Third Assignment of Error is as follows:
 THE TRIAL COURT ERRONEOUSLY INSTRUCTED THE JURY ON THE LAW REGARDING OTHER ACTS.
Although the trial court gave the standard jury instruction concerning the proper uses for which testimony concerning other bad acts may be considered, she prefaced that instruction with the following:
 On the issue of other acts, I have a written instruction I'm going to give you. I'm going to explain something to you in a more conversational tone and then I'll read this definition to you. The witnesses that testified to acts that occurred outside this county at different bus inspections are only permitted to testify in these cases for a very limited purpose. If you believe what they said but you don't believe that there were offenses that occurred in this jurisdiction, you cannot use this opportunity to penalize the defendant for something that happened somewhere else. In other words, what we're trying today is that two alleged offenses in this jurisdiction only.
 The only purpose for those witnesses testifying were on the issue of whether or not there was a mistake in the alleged offenses here, an accident, or to look at the defendant's motive, opportunity, intent or purpose, preparation or plan to commit the offense charged, offenses charged in this case, and these two cases here. So it is for that limited purpose.
 If you are totally convinced that those things or any of them happened somewhere else and you're not convinced of either of the allegations here, you must find that the defendant not guilty on both the allegations here. However, it is not accurate to say that you can't make that testimony make you think these charges are true. And that was one statement that was made in closing and I'm concerned about that.
 That evidence may be relevant as you determine whether it is or not on those other issues that I raised. If it was totally irrelevant to this case altogether as testimony to be received, you never would have been given that testimony. So for the limited purpose — and I'm not saying you believe that testimony or it was right testimony or should believe it. That's up to you. But the only reason it was let in was on those limited issues and I'm going to read that formal instruction to you now.
 This is the other acts instruction. And when we're done with this, we're going to give this to you in writing, the whole — the whole package of instructions so that you can refer to those things but let me read this formal instruction to you now.
 Evidence was received about the commission of acts other than the offenses with which the defendant is charged in this trial. The evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity or accordance with that character.
 If you find that the evidence of other acts is true and the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves one of the two following things: A, the absence of mistake or accident in this jurisdiction; and B — or B, not and B, or B, the Defendant's motive, opportunity, intent or purpose, preparation or plan to commit the offense charged in this case, these cases, this jurisdiction. That's the issue.
After the jury was instructed, Brown's counsel objected to the trial court's other acts instruction as follows:
 The second thing, Judge I want to raise is the Court in her instructions on other acts, prior to making and reading the other acts definition, the Court for lack of a better term used her own words to try to explain that to the jury. And I want to object to that. The Court at certain times the way I heard that, Judge, said that if you don't believe the other witnesses, five or six but to believe what the two witnesses in this jurisdiction said, then the defendant can be found guilty. And on behalf of defendant, Judge, as I said in my closing, it is entirely consistent in this case that the witnesses from Xenia and the charges herein are believable. We have never called them liars. That's not what is at issue in this case. At issue in this case is whether or not the conduct for which they say constitutes a crime. So just because they believe Cindy Hester or Terry Muterspaw —
THE COURT: Okay.
 MR. SKELTON: — I don't see in general that that makes it guilty. And I think that's what at least in part was said. So I would object to that.
 THE COURT: Actually, I think I said it the other way but I'll clarify that.
 MR. SKELTON: I'm going to object because I think that the Judge's comments about other acts other than what's permitted by or recommended by OJI is improper and I object for purposes of the record.
Thereafter, and before the jury began deliberating, the trial court gave the following curative instruction:
 Okay. Ladies and gentlemen of the jury, I want to correct one — I don't know that correct is the right word but I want to make sure that you don't have any kind of a misimpression — that's not a word, I know — of what I said about one thing. I don't want you to misapply that other acts testimony. And you will be given the instruction in writing, as I indicated, that I read to you about the other acts testimony and that is exactly the only way that you can consider that.
 What I said to you, I think, was if you — maybe the way I should say this is this. If you believed beyond a reasonable doubt — let me rephrase what I said before. If you believed beyond a reasonable doubt that something happened in some other jurisdiction, you can't convict for that other thing. The only thing that you can convict for is whether you — if you believed beyond a reasonable doubt one of the charges or more, one or more of the two charges that are filed here.
 And that's the danger of other acts testimony, is that you will penalize someone on a charge locally because someone else said something happened somewhere else.
 You can only use that outside testimony on certain issues as defined in the instruction I gave you, mistake, inadvertence, those kinds of things that are in that instruction. You make the determination of proof beyond a reasonable doubt not only based on what any witnesses said, any of them at all, and that would be witnesses from both sides for whatever weight you give any particular witness' testimony. It's not just certain witnesses' testimony. It's what you can consider, all the testimony except the other acts testimony.
 Those five witnesses only testified for a specific limited purpose. You still have to assess their credibility, but their claims and what you decide happened in those jurisdictions only comes in for the limited purpose as defined in the other acts statute. But you still have to find if you believe that. You still have to analyze whether the evidence submitted otherwise or with those limited purposes of that in coming out of jurisdiction testimony, whether the sum of the evidence adds up to a finding of beyond a reasonable doubt on each separately of the two charges filed here. So you do have to examine every witness' testimony.
 And the objection here, the concern is that I indicated if you believe the two alleged victims in the local jurisdiction, that is not of course the only thing that you have to analyze. You have to analyze those facts if you believe any of those apply to the law. You have to consider the other witnesses, of course. Otherwise, they wouldn't have been coming into testify. And I'm talking about the State's witness, defense witnesses, all the evidence that you've heard. And you do have to consider all those things to make that analysis of whether these local charges have been proven beyond a reasonable doubt.
 Okay. And the burden of proof is beyond a reasonable doubt. So let's have no — I guess there is some mention here in the definition here of inferring facts. Each element, each portion of the charge filed, this thing called sexual imposition, which you have been given, each part of these — of this charge, as to each, testimony must be proven beyond a reasonable doubt before you can find the defendant guilty as to one or both. And each one that you find him guilty of has to be separately proven beyond a reasonable doubt.
It appears that the trial judge's curative instruction, quoted above, addressed the concern expressed by Brown's counsel in his objection to the trial court's original instruction concerning the proper use of other bad acts evidence. There is nothing in the record to reflect that Brown's counsel objected to the curative instruction.
In his brief, Brown states:
 Defendant submits that the Court was obviously commenting about a statement made in closing along the lines that the other acts testimony does not go towards the guilt of the defendant — In fact, the comment by the Trial Court is exactly what the rule prohibits, to wit: the other acts evidence would be used to prove the truth of the crime alleged herein.
Brown misapprehends the law concerning the proper use of other bad acts evidence. If that evidence does not tend to make it either more or less probable that the defendant is guilty of the offense charged, then it is not relevant, and has no proper place in the trial. The prohibited use of the testimony is to support an inference that because the defendant committed a bad act in the past, he has a bad character, and therefore likely committed the charged offense. That is not a proper inference. The evidence may properly be used, however, to support an inference that the defendant's actions for which he is charged were not inadvertent, accidental, or the result of a mistake. To that extent, the evidence of the prior inappropriate touchings of other women under similar circumstances is probative of the defendant's guilt or innocence, and was properly before the jury as evidence used to prove the truth of the alleged offenses.
In short, we conclude that the trial court's instructions concerning the proper use of evidence of other bad acts, in its totality, was a correct statement of the law on that subject.
Brown's Third Assignment of Error is overruled.
 IV
Brown's Fourth Assignment of Error is as follows:
 THE TRIAL COURT COMMITTED ERROR BY FAILING TO SUSTAIN OBJECTIONS TO THE PROSECUTOR'S CLOSING ARGUMENT.
During the prosecutor's closing argument, the following colloquy occurred:
 You heard from a total of five witnesses come in that testified about prior acts that they had with the defendant. Now, I don't want you just to look at those prior acts and say, okay, because he did these things with them, he must have done those things with Cindy Hester and Terry Muterspaw. Independently looking at these two women and what happened to them, I believe you will see that these are intentional acts but the defendant did these acts to the women for — you draw the conclusion for what purpose other than to sexually gratify them.
 He wasn't intentionally coming in contact with the right hip bone every time. He wasn't intentionally coming in contact with their left foot every time. You didn't hear about any other area that he was coming into contact with every time. What you did hear with all these witnesses was one thing. It was one singular — they didn't know each other. They didn't all work as bus drivers in the same compound. They weren't even from the same jurisdiction.
 The only thing they all said is that they had been touched in a sensitive area of their body. And you ask yourself whether you would want someone touching you in a sensitive area of your body when you have no idea — no, you didn't know this person personally. They weren't your spouse. Defendant wasn't married to any one of these women.
 MR. SKELTON: Your Honor, I'm going to object to the characterization of the purpose of the other acts argument.
 THE COURT: Okay. Well, I didn't think — I'm going to overrule the objection. I am going to give a specific instruction about that. It would be best if people avoided the definition.
Whereupon, the prosecutor resumed her argument.
The only characterization that we can find in the cited portion of the prosecutor's argument going to the purpose of the other acts evidence was her statement that "I don't want you just to look at those prior acts and say, okay, because he did these things with them, he must have done those with Cindy Hester and Terry Muterspaw." In our view, this is a correct statement of the law, and works to Brown's benefit.
Brown also argues that the trial court should have sustained an objection to the following statement later in the prosecutor's closing argument:
 I want you to look at the evidence in this matter. It's the evidence that should be looked at in this matter, not the fact of whether or not the defendant was a good field training officer or was a best friend of someone's husband. You need to listen to the witnesses here and the witnesses who observed Cindy Hester being touched on her breast over her shoulder and you need to listen to the witnesses — the other women from the other jurisdictions and I believe they are considered the prior acts.
 Well, you're going to get an instruction. As defense counsel said, you're going to get an instruction from the Judge that's going to address that and you can look at the other acts of prior jurisdictions according to the instruction. I'm going to let the Judge do that and decide for yourself.
Whereupon, Brown objected.
In our view, the trial court was not required to sustain Brown's objection to the above-quoted portion of the State's closing argument. The prosecutor merely commented that the jury was going to get an instruction from the judge concerning the proper uses for which evidence of other bad acts could be considered, and the jury could look at the other acts according to that instruction. There is nothing objectionable in that statement. The jury was free to consider the evidence of other bad acts according to the instruction received from the trial judge concerning the proper uses for which evidence of other bad acts could be considered.
Brown's Fourth Assignment of Error is overruled.
 V
Brown's Fifth Assignment of Error is as follows:
 THE TRIAL COURT ERRED BY NOT DISMISSING THE COMPLAINT REGARDING TERRY MUTERSPAW.
Brown relies upon R.C. 2907.06(B), which provides as follows:
 No person shall be convicted of a violation of this section [sexual imposition] solely upon the victim's testimony unsupported by other evidence.
Brown contends that there was no other evidence to support Muterspaw's claim that Brown touched her breast for the purpose of sexual gratification.
The State directs our attention to State v. Economo (1996),76 Ohio St.3d 56, in which a conviction for Sexual Imposition was upheld against a similar contention that it was not supported by corroborative evidence, as required by R.C. 2907.06(B). In that case, the complaining witness testified that the defendant, a physician, had touched her inappropriately, for purposes of sexual gratification. No other witness observed the touching. However, the complaining witness' sister had come with her to the defendant's office, and testified that when her sister left the examination room, she was on the verge of crying. The Supreme Court held that the evidence needed to corroborate the charge of Sexual Imposition is minimal, need not prove the facts that are the very substance of the crime charged, need not be independently sufficient to convict the accused, and need not go to every essential element of the crime charged. "Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." Id., at 60. The Supreme Court analyzed the corroborating evidence in that case, as follows:
 We find that the corroborating evidence in the case before us satisfies R.C. 2907.06(B). First, it is undisputed and supported by the medical records that Economo and Doman had a physician-patient relationship from 1986 through July 10, 1992 and medical records indicate that Doman was treated by Economo on July 6, 1992. Watt testified that when she and Bill Mann arrived at Economo's office on July 10, 1992, Bill Mann was scared and upset and Bill Mann asked Watt to come into the examination room so that Economo would refrain from touching her. Watt also testified that when Bill Mann left the examination room she was on the verge of crying.
 This other evidence, although independently insufficient to convict Economo, tends to support Bill Mann's testimony. The medical records evidence an opportunity for Economo to commit the offense, and Watt's testimony shows that Doman was afraid of being alone with Economo. The fact that Watt accompanied Doman to the doctor's office on July 10th, permits a reasonable inference that Doman reported the alleged sexual activity to her within seven days of their first incident (July 3) and four days of the second (July 2).
We agree with the State in the case before us that the facts are comparable to those in Economo, supra. That Muterspaw was in the bus with Brown when he allegedly grabbed her by the breast was established by the testimony of several witnesses. Several witnesses testified that Terry Muterspaw was very upset and angry during the bus inspections. One witness, Laura Smith, testified that Terry Muterspaw complained to her, and that she had heard voices raised in an interchange involving Muterspaw. Although this corroborative evidence is slight, it is no more slight than the corroborative evidence in State v. Economo, supra, which was held to be sufficient for purposes of R.C. 2907.06(B).
Brown's Fifth Assignment of Error is overruled.
 VI
Brown's Sixth Assignment of Error is as follows:
 THE CONVICTION HEREIN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
When determining whether a judgment is against the manifest weight of the evidence, an appellate court is required to give substantial deference to the factfinder's determinations of credibility. However, in the case before us, Brown does not attack the credibility of the complaining witnesses. To the contrary, he argues that the State failed to prove, beyond a reasonable doubt, that the inappropriate touchings were intentional or for the purpose of sexual gratification. Absent a confession, of course, Brown's purpose in touching the women must be proven by circumstantial evidence. ". . . [T]he decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." State v. Lawson (August 22, 1997), Montgomery App. No. 16288, unreported.
In other words, because our review of the weight of the evidence in the case before us involves the probative force of the inferences to be drawn from the direct evidence, rather than the credibility of witnesses, we need not be as deferential to the factfinder when determining whether Brown's conviction is against the manifest weight of the evidence.
We have reviewed the entire transcript of the testimony in this case, and we are satisfied that Brown's conviction, on both charges, is not against the manifest weight of the evidence. With respect to Hester, the evidence is that Brown reached over her shoulder and touched her breast with his hand. With respect to Muterspaw, her testimony was that he touched her breast, closed "it" (presumably, his hand), and then turned her somewhat. Even without the evidence of Brown's inappropriate touchings of other women, these touchings do not appear to have been inadvertent or accidental. In this regard, the fact that he offered no apology, and otherwise made no statement or gesture to indicate that his touching the women's breasts had been an accident, is significant.
Furthermore, the testimony concerning Brown's having inappropriately touched other female bus drivers, under similar circumstances, on their breasts or buttocks, was impressive. This evidence strongly suggests that the touchings were not accidental, especially since there was no evidence, other than a suggestion that he might have done so, that Brown had touched these women on other, less erogenous, parts of their bodies.
Sitting as a "thirteenth juror," we are satisfied that Brown's guilt on both charges was proven beyond reasonable doubt. See, State v. Thompkins (1997), 78 Ohio St.3d 380, at 386.
Brown's Sixth Assignment of Error is overruled.
 VII
Brown's Seventh Assignment is as follows:
 THE TRIAL COURT'S COMMENTS DURING COUNSEL'S EXAMINATION WERE IMPROPER AND PREJUDICIAL.
Brown bases this assignment of error upon the following colloquy:
 MS. LEWIS: I'm going to object at this point because what's the relevancy? As I said earlier, we are talking about events that occurred in other jurisdictions and he's testified that he spoke with the victims in this case personally so that's where his duties lie. His duties do not lie in Hillsboro or Mason.
THE COURT: Okay.
 MR. SKELTON: And, why Your Honor, if I can respond to that, if the only evidence that we hear in this case was from the victims in this case, I wouldn't be getting into this. However, what's good for the goose is good for the gander, Judge. She's brought in all these other people and I want to find out what investigation that this guy who's in charge of the investigation has done.
MS. LEWIS: And the appropriate —
 THE COURT: Well, we called this guy, Sergeant Linkhart, Number 1, Number 2 —
 MR. SKELTON: And I have known him for 20 years, Judge, I have no problem with him.
 THE COURT: Let's not be disrespectful, because you're arguing with the prosecutor, to any witness.
 MR. SKELTON: Well, I apologize if I appear to be disrespectful, Judge, but I'm trying to examine a witness.
 THE COURT: I understand that. I understand that. I'm going to overrule the objection that she has and permit the questioning.
Brown contends that he was prejudiced when the trial court characterized his counsel as having been disrespectful to the witness, Sergeant Linkhart, when referring to him, in the course of arguing against an objection by the State, as "this guy who's in charge of the investigation."
As Brown notes, the trial court did give the standard instruction to the jury to disregard anything the trial court might have said which might be considered an indication of her view of the facts. However, Brown argues that the trial court's having "sided" with Linkhart, a witness for the prosecution, unfairly prejudiced him.
We agree with Brown that the trial judge should not have called attention to the fact that his counsel had referred to Sergeant Linkhart as "this guy who's in charge of the investigation," when arguing against the State's objection. "Guy" is not ordinarily a derogatory term. The prosecutor used it, herself, when referring to the defendant: "they trained at the academy and he thought he [Brown] was a pretty good guy." Indeed, judges of this court have, on occasion, been referred to during oral arguments before this court, especially by younger counsel, as "you guys" (as in "that issue is for you guys to decide"). While that term is somewhat indecorous, we have never construed it to be, or as having been intended to be, disrespectful.
Nevertheless, we are not persuaded that this one remark, in the middle of the trial court's having made an evidentiary ruling in Brown's favor, tainted the trial. Brown's counsel, himself, commented, in the presence of the jury, concerning the long time that he had known Sergeant Linkhart professionally. Linkhart was merely the investigating officer, and his credibility was not an issue during the trial.
Furthermore, we have examined the entire record of this trial, and we conclude that the trial judge, the Honorable Susan L. Goldie, was exemplary in her performance of her duties in the course of presiding over this trial. There were difficult moments. For example, after the first, complaining witness had testified, one of the alternate jurors disclosed that she was related to that witness.[1] There were the usual scheduling problems. In dealing with all of these problems, Judge Goldie was at pains to be civil to all of the participants, and fair to both parties.
Brown's Seventh Assignment of Error is overruled.
 VIII
All of Brown's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.
[1] Although the alternate juror was not excused at this time, she was admonished not to disclose the existence of the relationship, and she was ultimately excused from deliberations, not having been needed.