WALTER J. ROTHSCHILD, Judge.
| ^Defendant, Rene Netter, was charged with one count of simple burglary of an inhabited dwelling, a violation of LSA-R.S. 14:62.2.[1] He pled not guilty at arraignment. On July 9, 2010, the matter proceeded to trial, and a 12-person jury returned a verdict of guilty as charged. On July 26, 2010, the trial court sentenced defendant to eight years at hard labor, with the first year to be without benefit of parole, probation, or suspension of sentence.
That same day, the State filed a multiple offender bill of information, alleging defendant to be a sixth felony offender, to which defendant entered a plea of not guilty. On August 23, 2010, the court conducted a hearing on the multiple bill and took the matter under advisement. On September 1, 2010, the court found defendant to be a fourth felony offender and sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
| ¡¡FACTS
Joshua Veal testified that at the time of the commission of the offense, he and defendant had been acquaintances for about a month. At some point during this time, Veal agreed to purchase a truck from defendant for $500.00. According to Veal, he paid defendant in cash, but never received the truck. Unable to provide Veal with the truck, which he claimed had been stolen, defendant owed Veal the return of the $500.00, but did not have the money to pay him. Late in the evening on June 5, 2009, Veal encountered defendant outside of a Brothers Food Mart on Airline Drive. Here, defendant told Veal that his girlfriend had a check for $500.00 that they could obtain from her. From there, they walked to a nearby trailer park, where defendant claimed his girlfriend lived.
Around 2 a.m. on June 6, 2009, Ms. Ingeborg Tompkins, was awakened in her trailer by the sound of breaking glass, followed by a flashlight in her face and her arms pinned down to her bed with a crowbar in her side.[2] Defendant, whom Ms. Tompkins had described as a heavyset, black person with a black jacket and hood *481 over his bald head, repeatedly yelled at her, “Where is the money?” Ms. Tompkins then noticed another individual behind defendant, whom she described as “a very skinny black gentleman,” “very nice,” “gentle,” “very protective.” Veal, who had been told by defendant to stay outside because his girlfriend did not like visitors, had entered the trailer when he heard the victim screaming, “Help me!” According to Ms. Tompkins, as Veal entered the bedroom, defendant addressed him, “Joe, bring me the knife. I’m going to kill that bitch.”[3] Soon thereafter, when Ms. Tompkins informed defendant that she did not have any money, he released her. Veal helped her up to go to the bathroom, telling her, “I’m coming back ^tomorrow. I’ll straighten it out.” When the victim exited the bathroom, both men were gone, her bedroom was “a shamble,” and about seven dollars in change, a cellular phone, two purses, and two bottles of perfume were missing. Ms. Tompkins then called the police, who arrived shortly thereafter.
Following a broadcast relative to the burglary, Sergeant Russell Moran, who was on patrol in the area, observed two subjects that matched the description of the perpetrators. He saw that the heavyset one had something tucked under his arm and made a throwing motion as the officer passed by. When Sergeant Moran made a U-turn to stop the subjects, he noticed the smaller of the two men walking down the street toward him flailing his arms. It was Veal. He told Sergeant Moran that the person the officer was looking for ran through his backyard.
After other officers arrived on the scene and Veal had been detained, Sergeant Moran began to search for defendant. He found him lying on the ground along the side of a house at 900 Compromise Street, attempting to not be seen.[4] A few feet away, the victim’s purse and perfume bottles were found. Defendant was arrested and a search incident to arrest was conducted, which revealed a flathead screwdriver and a pair of black insulated gloves. As the arresting officer began to read defendant his Miranda[5] rights, defendant cut him off, saying, “I know about all this because, man, I know about all this. This is all I know how to do.” “Take me to jail.”
After both suspects had been apprehended, Ms. Tompkins was transported by police officers to the suspects’ location. The victim had not seen the suspects’ faces, but she was able to identify them based on their body types.

_[¿AWAND DISCUSSION

In his first assignment of error, defendant argues that the trial court erred in denying his request for a jury instruction on the defense of intoxication. He contends that the determination of whether he was sufficiently intoxicated to preclude the presence of specific intent is to be resolved by the trier of fact and that it was an error for the trial court to deprive the jury of making that determination.
Defendant was convicted of simple burglary of an inhabited dwelling. LSA-R.S. 14:62.2 defines that offense as “the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the *482 intent to commit a felony or any theft therein.” To convict an accused of simple burglary of an inhabited dwelling, the State must prove: (1) there was an unauthorized entry; (2) the structure was inhabited at the time of entry; and (8) the defendant had the specific intent to commit a felony or theft inside the structure. State v. Davenport, 08-463, p. 7 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 449, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473; State v. Schnyder, 06-29, p. 6 (La.App. 5 Cir. 6/28/06), 937 So.2d 396, 400.
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1); Davenport, 08-463 at 7, 2 So.3d at 449. Specific intent may be inferred from the circumstances and actions of the accused. Id.; State v. Petty, 99-1307, p. 3 (La.App. 5 Cir. 4/12/00), 759 So.2d 946, 949, writ denied, 00-1718 (La.3/16/01), 787 So.2d 301.
Voluntary intoxication is a defense to a prosecution for simple burglary only if the circumstances indicate that it has precluded the presence of specific criminal Ifiintent. LSA-R.S. 14:15(2); Davenport, 08-463 at 7, 2 So.3d at 449. The defendant has the burden of proving the existence of that condition at the time of the offense. Id. The specific legal question is not when the requisite specific intent was formed, but rather whether, at the time the unauthorized entry occurred, the defendant was so intoxicated as to preclude the existence of any specific intent on his part to commit a theft or felony therein. Id.; State v. Sopczak, 02-235 (La.App. 5 Cir. 6/26/02), 823 So.2d 978, 982-83, writ denied, 02-2471 (La.3/21/03), 840 So.2d 548.
When circumstances exist that intoxication could have precluded specific intent, the burden shifts to the State to show beyond a reasonable doubt that specific intent was present. Davenport, 08-463 at 7-8, 2 So.3d at 449; State v. Dammeron, 98-378, pp. 2-3 (La.App. 5 Cir. 9/29/98), 719 So.2d 1151, 1154, writ denied, 98-2830 (La.2/26/99), 738 So.2d 1067. Whether intoxication is sufficient to negate specific intent is a question for the trier of fact. Davenport, supra; Dammeron, 98-378 at 2-3, 719 So.2d at 1154. Intoxication is an observable condition about which a witness may testify. State v. Taylor, 31,-227, p. 5 (La.App. 2 Cir. 10/28/98), 720 So.2d 447, 450; State v. Allen, 82-1505 (La.10/17/83), 440 So.2d 1330, 1334.
LSA-C.Cr.P. art. 802 mandates that the trial court instruct the jury on the law applicable to each case. State v. Lawson, 08-123, p. 15 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 527. The court is required to charge the jury on the law applicable to any theory of defense, when properly requested, which the jurors could reasonably infer from the evidence. Id. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Henry, 08-658, pp. 14-15 (La.App. 5 Cir. 10/27/09), 27 So.3d 935, 946, writ denied, 09-2485 (La.4/23/10), 34 So.3d 269; Lawson, supra. The evidence presented at trial must support the requested special charge. State v. Holt, 08-1276, p. 11 (La.App. 5 Cir. 5/26/09), 12 So.3d 502, 508, writ denied, 09-1681 (La.3/26/10), 29 So.3d 1249; Lawson, supra.
In the instant case, the record does not show that any urine or blood tests were performed. The only testimony presented at trial to suggest that defendant could have been intoxicated prior to entering the trailer was that of Veal. He stated that on *483 the night of the offense, he did not see defendant drink alcohol or ingest any drugs, but defendant did seem intoxicated. However, Veal also stated that defendant was not stumbling or staggering and that “you could ... understand what he was talking about.” In Veal’s statement to police, he stated that he told the victim that defendant was “crazy on drugs.” The police report also indicates that the victim informed the police that Veal told her that defendant is “crazy and is on drugs.” However, at trial, Veal testified that this statement was based on his belief that he could not otherwise understand why someone would “hurt an old lady.”
Additionally, the testimony of two police officers belies Veal’s assertions of intoxication. Sergeant Russell Moran testified that although officers helped defendant up off the ground when he was apprehended, he was then able to stand on his own and was not falling down. He also testified that defendant seemed to understand what was going on and was cooperative. Similarly, Officer Brent Donovan testified that defendant was able to stand on his own, that he was not wobbling, that he was speaking clearly, that he did not seem to be drunk, and that he appeared to understand what the officer was saying to him.
Even if the jury could have believed that defendant was intoxicated when he entered the trailer, the State clearly proved beyond a reasonable doubt that defendant still had the requisite specific intent to commit a theft within the trailer.
|sThe intent to commit a theft may be inferred from the circumstances that surround the commission of the offense. Davenport, 08-463 at 9, 2 So.3d at 450; State v. Pike, 426 So.2d 1329, 1333 (La.1983). In this case, defendant’s actions support the inference that he had the specific intent to commit the charged offense. The facts suggest that he deliberately targeted an elderly and handicapped woman who lived alone and collected rent money in cash. He arrived at her trailer clad in all black with tools to commit a burglary: gloves, a screwdriver, a crowbar, and a flashlight. He created a cover story to mislead Veal into thinking the trailer was his girlfriend’s and that she was expecting him. Once inside the trailer, defendant demanded money from the victim, and when she did not comply with his demands, he rummaged through the trailer, leaving the place “a shamble.”
Accordingly, based on the record before us, we find that the trial court did not err in refusing to give the requested jury instruction, because the evidence presented at trial did not show that defendant was sufficiently intoxicated to vitiate specific criminal intent.[6] Thus, this assignment of error is without merit.
In his second assignment of error, defendant contends that his enhanced life sentence was excessive in light of the fact that the crime for which he was sentenced did not involve death or permanent harm to the victim. However, we have noted an error on error patent review that precludes discussion of this assignment of error.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals that the trial court did not vacate defendant’s original sentence prior to imposing his en *484 hanced sentence. This Court |flhas held that where the original sentence on the underlying offense has not been vacated at the time of defendant’s sentencing as a multiple offender, the original sentence remains in effect and the subsequent sentence as a multiple offender is null and void. State v. Boss, 03-133 (La.App. 5 Cir. 5/28/03), 848 So.2d 75, 78-79, writ denied, 03-1968 (La.5/14/04), 872 So.2d 508; State v. Dyer, 00-1866, (La.App. 5 Cir. 4/24/01), 794 So.2d 1, 13, writ denied, 01-1579 (La.6/27/03), 847 So.2d 1256. In the instant case, neither the transcript nor the commitment indicates that the trial court vacated defendant’s original sentence prior to imposing his enhanced sentence. Therefore, we find that defendant’s multiple offender sentence is null and void. We vacate defendant’s multiple offender sentence and remand the matter to the trial court for resentencing, with instructions to vacate defendant’s original sentence before imposing the multiple offender sentence.
In light of our finding that defendant’s multiple offender sentence is null and void, we cannot address defendant’s argument that his multiple offender sentence was excessive.
On error patent review, we also note that the trial judge failed to advise defendant of the prescriptive period for seeking post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. Thus, we instruct the trial court, at resentencing, to advise defendant of the proper prescriptive period for post-conviction relief.

DECREE

For the foregoing reasons, defendant’s conviction and sentence for simple burglary of an inhabited dwelling, and the finding that defendant is a fourth felony offender, are affirmed. Defendant’s multiple offender sentence is vacated and the matter is remanded to the trial court for resentenc-ing.

CONVICTION AFFIRMED; MULTIPLE OFFENDER SENTENCE VACATED, REMANDED FOR RESENTENC-ING.

. Defendant was originally charged with one count of home invasion, a violation of LSA-R.S. 14:62.8, but the State later amended the bill of information to charge him with simple burglary of an inhabited dwelling.

. Ms. Tompkins was 78 years old, lived alone, and used a wheelchair. She was the manager of the trailer park and was responsible for collecting rent, which was paid in cash, checks, or money orders.

. Joshua Veal testified that defendant stated, "Bobby, bring the knife. I’m going to slit her throat.”

. Joshua Veal lived at 2114 9th Street, just east of 900 Compromise Street. At Mr. Veal’s residence, a crowbar was found on the side of the house and a flashlight on the porch.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. We further note that the defense did not submit the requested jury instruction in writing. When a special jury charge is not reduced to writing for presentation to the court, a trial judge may properly refuse to give such a charge. LSA-C.Cr.P. art. 807; State v. Lawson, 08-123, p. 15 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 527.