45 A.3d 166

**Chaz Kinichi BAZZLE**

v.

**STATE of Maryland.**

No. 89, Sept. Term, 2011.

Court of Appeals of Maryland.

May 22, 2012.

Michael R. Braudes, Asst. Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Jessica V. Carter, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

ADKINS, J.

In this case, we address the required evidentiary showing for an instruction on voluntary intoxication. Secondarily, we decide what constitutes a request for grounds of an objection within the meaning of Maryland Rules 5–103(a) and 4–323. After his convictions for attempted second-degree murder, attempted armed carjacking, and first-degree assault, Petitioner Chaz K. Bazzle appealed, arguing that the trial court had committed reversible error by (1) failing to instruct the jury on voluntary intoxication and (2) allowing a witness to testify as to the certainty of his eyewitness identification.

The Court of Special Appeals affirmed, and Petitioner filed a petition for *certiorari*, which we granted. *Bazzle v. State*, 423 Md. 450, 31 A.3d 919 (2011). For the reasons described below, we shall affirm the judgment of the Court of Special Appeals and hold that (1) the evidence did not generate an instruction on voluntary intoxication because it was insufficient to allow a jury to rationally conclude that Petitioner was so intoxicated that he was unable to form the intent necessary to constitute his crimes; and (2) Petitioner failed to preserve his objection to the witness's testimony because the trial court, by stating that it would overrule the objection unless grounds were provided, triggered the requirement, under Maryland

Rules 5–103(a) and 4–323, that Petitioner provide grounds or lose the opportunity to raise the objection on appeal.

### Facts and Legal Proceedings

On June 29, 2008, Petitioner Chaz K. Bazzle got drunk with his friends. According to Petitioner, he consumed at least three 40–ounce containers of beer in an apartment complex, went to a mall in Columbia, and drank more alcohol. He left the mall and was walking to meet his friend Lakita Butler when he was attacked and stabbed six or seven times. He ran to Butler's house, arriving around 11 p.m. Butler testified that Petitioner was "bleeding" and "almost about to pass out" when he arrived. She called 911, and Petitioner was taken to a hospital, where his blood alcohol content was measured at .157, and then again at. 137. At the hospital, Petitioner spoke with Detective Donald Guevara, telling him that he had been attacked by one man and one woman "on the footbridge that goes across Little Patuxent Parkway from the waterfront towards the mall."

Petitioner was asleep in a hospital bed when Kohlya Eggleston, who was also being treated for stab wounds suffered that evening, recognized Petitioner as his attacker. According to Eggleston's testimony, earlier that evening he had been sitting in a truck in a gas station when a man approached, opened the door, and said, "Get out of the motherfucking car." The man then stabbed him multiple times with a weapon before he could exit. Eggleston could not tell what kind of weapon was used because the man had wrapped a shirt around his hand to conceal it. The man had also been wearing a bandana to cover his face, but it slipped down during the encounter, allowing Eggleston to recognize him as Petitioner, whom he already knew as an acquaintance. Asked how certain he was that Petitioner was his attacker, Eggleston testified: "very certain."

Petitioner testified in his own defense, denying that he had attacked Eggleston. He also said that he was unable to recall some of his own behavior on the night he was attacked. He objected to the question about Eggleston's certainty, but was

overruled. He also requested a jury instruction on voluntary intoxication, but his request was denied. A jury found Petitioner guilty of attempted second-degree murder, attempted armed carjacking, and first-degree assault. Petitioner appealed, arguing, among other things, that the trial court erred by denying his request for an instruction on voluntary intoxication and admitting Eggleston's testimony about his certainty. The Court of Special Appeals affirmed, and Petitioner filed a petition for *certiorari*, asking:

1. Where, during the same evening that Petitioner was alleged to have committed specific-intent offenses, hospital personnel measured his blood alcohol level at .157 and .137, Petitioner testified that he drank heavily throughout the evening, and a witness described him as "bleeding" and "almost about to pass out," did the trial court err in refusing to instruct the jury upon the defense theory of voluntary intoxication?

2. In a prosecution in which the identity of the perpetrator is at issue, is it appropriate to admit into evidence the level of certainty of the complaining witness?

## Voluntary Intoxication Instruction

In an unreported opinion, the Court of Special Appeals held that Petitioner had not presented enough evidence to entitle him to an instruction on voluntary intoxication. To be entitled to such an instruction, the court held, a defendant must show "some evidence of the *great intoxication* required to negate a specific intent crime." The court held that, although there was evidence that Petitioner was intoxicated, there was no evidence that his intoxication was so severe that he could not form a specific intent, did not appreciate what he was doing, or was robbed of his mental faculties. Thus, it held that an instruction on voluntary intoxication was not generated by the evidence.

Petitioner disagrees, arguing that a voluntary intoxication instruction was relevant and generated by the evidence. The instruction was relevant, he says, because it provides that

intoxication can negate the specific intent element of a crime, and his convictions—attempted second-degree murder, attempted armed carjacking, and first-degree assault—each contained a specific intent element.[1] The instruction was generated by the evidence, he says, because four pieces of evidence show that he was "so intoxicated, at the time of the act, that he was unable to form" a specific intent: (1) his elevated blood alcohol content; (2) his memory loss; (3) the "senseless manner" in which the assault was committed; and (4) witness testimony describing him as "almost about to pass out" on the night of the crime.

The State responds that Petitioner has not produced enough evidence to generate the instruction because, although there was evidence of intoxication, there was no evidence that he was "so intoxicated when he committed the crimes that he could not form the necessary legal intent." The State asks that we adopt the reasoning of the Court of Special Appeals in *Lewis v. State*, 79 Md.App. 1, 13 n. 4, 555 A.2d 509, 515 n. 4 (1989), which held that, without more, mere evidence that a defendant consumed alcohol, even in an "inordinate amount," is not sufficient to raise the issue of whether the defendant was so intoxicated that he could not form a specific intent.

Maryland Rule 4–325(c) provides: "The court may, and at the request of any party shall, instruct the jury as to the applicable law[.]" We review "a trial court's refusal or giving of a jury instruction under the abuse of discretion standard." *Stabb v. State*, 423 Md. 454, 465, 31 A.3d 922, 928 (2011). In doing so, we keep in mind:

---

1. *See* Maryland Criminal Pattern Jury Instruction 3:31.1 ("[W]hen charged with an offense requiring a specific intent, the defendant cannot be guilty if [he] [she] was so intoxicated, at the time of the act, that [he] [she] was unable to form the necessary intent.") *State v. Brady*, 393 Md. 502, 513, 903 A.2d 870, 876 (2006) ("In Maryland, criminal attempt requires a specific intent to commit the crime attempted."); *Dixon v. State*, 364 Md. 209, 239, 772 A.2d 283, 301 (2001) ("[F]irst degree assault ... requires the specific intent to cause, or attempt to cause, serious physical injury.").

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. Where the decision or order [of the trial court] is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

*Id.* (quoting *In re Don Mc.,* 344 Md. 194, 201, 686 A.2d 269, 272 (1996)).

■ In evaluating whether an abuse of discretion occurred: We consider the following factors when deciding whether a trial court abused its discretion in deciding whether to grant or deny a request for a particular jury instruction: (1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered in the instructions actually given.

*Id.* at 465, 31 A.3d at 928–29.

Here, the parties do not dispute that the requested instruction was a correct statement of the law and was not covered elsewhere in the trial court's instructions. The only question is whether the instruction was applicable under the facts of the case. The requested instruction, Maryland Criminal Pattern Jury Instruction 3:31.1, provides:

You have heard evidence that the defendant acted while intoxicated by [drugs] [alcohol]. Generally, voluntary intoxication is not a defense and does not excuse or justify criminal conduct. However, when charged with an offense requiring a specific intent, the defendant cannot be guilty if [he] [she] was so intoxicated, at the time of the act, that [he] [she] was unable to form the necessary intent.

A specific intent is a state of mind in which the defendant intends that [his] [her] act will cause a specific result. In this case, the defendant is charged with the offense of (offense requiring a specific intent), which requires the

State to prove that the defendant acted with the specific intent to (specific intent). [Voluntary intoxication is not a defense to (list offenses not requiring a specific intent).]

In order to convict the defendant, the State must prove, beyond a reasonable doubt, that the degree of the intoxication did not prevent the defendant from acting with that specific intent. A person can be [drinking alcoholic beverages] [taking drugs] and can even be intoxicated, but still have the necessary mental faculties to act with a specific intent.[2]

A requested jury instruction is applicable if the evidence is sufficient to permit a jury to find its factual predicate. As we said in *Dishman v. State:*

The threshold determination of whether the evidence is sufficient to generate the desired instruction is a question of law for the judge. The task of this Court on review is to determine whether the criminal defendant produced that minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired. (Citations omitted.)

*Dishman v. State,* 352 Md. 279, 292–93, 300, 721 A.2d 699, 705, 709 (1998) (holding that, because "the evidence allowed the jury to conclude that Petitioner acted with gross negligence and not a specific intent to kill or cause serious bodily injury, the trial court erred by refusing the manslaughter instruction"); *see also Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037, 1040–41 (1991) ("We first must determine if the evidence adduced at the trial generated a jury issue as to whether [the defendant] acted in the honest belief that he had the right to obtain or exert control over the property as he did.... In our view, [the defendant's] testimony was sufficient to support fairly the issue whether he acted in an honest belief[.]" (quotation marks omitted)); *Smith v. State,* 302 Md. 175, 183,

---

2. Petitioner also requested Maryland Criminal Pattern Jury Instruction 5:08, which is substantially equivalent to 3:31.1.

486 A.2d 196, 200 (1985) ("The instruction should be given in every case where there is sufficient evidence to take the issue to the jury." (citations and quotation marks omitted)).

As we explained in *Dykes v. State,* 319 Md. 206, 216–17, 571 A.2d 1251, 1257 (1990), the threshold is low, as a defendant needs only to produce "some evidence" that supports the requested instruction:

> *Some evidence* is not strictured by the test of a specific standard. It calls for no more than what it says—"some," as that word is understood in common, everyday usage. It need not rise to the level of "beyond reasonable doubt" or "clear and convincing" or "preponderance." The source of the evidence is immaterial; it may emanate solely from the defendant. It is of no matter that the self-defense claim is overwhelmed by evidence to the contrary. If there is any evidence relied on by the defendant which, if believed, would support his claim ... the defendant has met his burden. Then the baton is passed to the State. It must shoulder the burden of proving beyond a reasonable doubt to the satisfaction of the jury [the specific facts stated in the instruction].

*See also State v. Evans,* 278 Md. 197, 207–08, 362 A.2d 629, 636 (1976) ("[T]he burden of initially producing some evidence on the [requested instruction] (or of relying upon evidence produced by the State) sufficient to give rise to a jury issue with respect to [the instruction], is properly cast upon the defendant.").[3] Furthermore, "[i]n evaluating whether competent evidence exists to generate the requested instruction, we view the evidence in the light most favorable to the accused." *General v. State,* 367 Md. 475, 487, 789 A.2d 102, 108 (2002).[4]

---

**3.** This case was superseded by statute on other grounds. *See* Chapter 501 of the Acts of 1984; *Anderson v. Dep't of Health & Mental Hygiene,* 310 Md. 217, 220–22, 528 A.2d 904, 906–07 (1987).

**4.** By deciding whether the evidence is sufficient to generate a jury instruction, we do not place any burden on the defendant to prove his innocence. In *State v. Evans,* we explained that, although the Supreme Court held that it is unconstitutional to require a criminal defendant to

Petitioner contends that four pieces of evidence, viewed together and in the light most favorable to him, meet this low threshold. He argues that his blood alcohol content and memory loss on the night of the crime, combined with Butler's testimony that he was "almost about to pass out" and the illogical manner in which the assault was committed (asking Eggleston to exit the vehicle and then not giving him the opportunity to do so [5]), constitute "some evidence" that would

---

prove an affirmative defense, *see generally Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), there is no constitutional infirmity in requiring a criminal defendant to put forth some evidence supporting a defense before granting his or her request to instruct the jury on it:

> Of course, nothing in *Mullaney* per se precludes the use of traditional presumptions or logical inferences arising from established facts; what *Mullaney* precludes is the use of such presumptions or inferences only when they operate, ultimately, to relieve the State of its burden of persuasion in a criminal case, *i.e.*, its burden of proving beyond a reasonable doubt all the facts necessary to constitute the offense when the issue of their existence becomes an issue in the case. The ... burden of initially producing "some evidence" on the issue of mitigation or self-defense (or of relying upon evidence produced by the State) sufficient to give rise to a jury issue with respect to these defenses, is properly cast upon the defendant. Once the issue has been generated by the evidence, however, the State must carry the ultimate burden of persuasion beyond a reasonable doubt on that issue. Nothing in *Mullaney* in any way purports to circumscribe this well-established procedure; indeed in *Mullaney* the Court recognized that many states do require the defendant to make a threshold showing that there is "some evidence" indicating that the defendant acted in the heat of passion before the prosecution is required to negate this element of the offense beyond a reasonable doubt. In other words, the prosecution need not in the first instance introduce evidence of facts which negate the existence of mitigating circumstances or of self-defense; and if the defendant adduces no evidence of these matters, no issue of their existence is raised in the case and no jury instructions regarding mitigating circumstances or self-defense need be given. (Some citations and quotation marks omitted.)

*State v. Evans*, 278 Md. 197, 207–08, 362 A.2d 629, 635–36 (1976), *superseded by statute on other grounds*, Chapter 501 of the Acts of 1984, *as recognized in Anderson*, 310 Md. at 220–22, 528 A.2d at 906–07.

5. Petitioner does not admit to having committed the assault, but argues in the alternative that even if he had, the illogical manner in which it was committed supports a finding of extreme intoxication. *See Sims v. State*, 319 Md. 540, 550, 573 A.2d 1317, 1321 (1990) ("[A] defendant is entitled to have the jury instructed on any theory of defense that is fairly

allow a jury to rationally conclude that he was so intoxicated that he could not form a criminal intent. Thus, he argues, the trial court invaded the province of the jury by refusing to give a voluntary intoxication instruction.

The State responds that such evidence, at most, only goes to show that Petitioner's functioning was impaired by alcohol, not that he was incapable of forming an intent. The State cites *Lewis*, in which Judge Pollitt for the Court of Special Appeals wrote:

> [T]he single fact that one has consumed what some may consider to be an inordinate amount of alcohol, standing alone, with no evidence as to the [effect] of that alcohol on the defendant, would not permit a jury reasonably to conclude that he had lost control of his mental faculties to such an extent as to render him unable to form the intent[.]
>
> \* \* \*
>
> [T]here was no attempt in this case to offer expert opinions as to the [effect] on the defendant of the ingestion of those quantities of alcohol. . . . Without knowing the level of one's tolerance, no good correlation can be observed between the amount of alcohol consumed and the degree of drunkenness displayed. In short, it is not the amount consumed but the effect on the consumer that is important. (Citations and quotation marks omitted.)

*Lewis*, 79 Md.App. at 12–13, 13 n. 4, 555 A.2d at 514–15, 515 n. 4.

As we said in *Hook v. State*, mere intoxication is insufficient to negate a specific intent:

> Evidence of drunkenness which falls short of a **proven incapacity in the accused to form the intent necessary to constitute the crime** merely establishes that the mind was affected by drink so that he more readily gave way to some violent passion and **does not rebut the presumption that a**

supported by the evidence, even if several theories offered are inconsistent.").

man intends the natural consequence of his act. (Emphasis added.) (Citations and quotation marks omitted.) *Hook v. State*, 315 Md. 25, 31 n. 9, 553 A.2d 233, 236 n. 9 (1989); *see also Shell v. State*, 307 Md. 46, 62, 512 A.2d 358, 366 (1986) ("The question . . . is whether a defendant has reached that stage of intoxication that renders him incapable of forming the requisite *mens rea* which is a necessary element of all specific intent crimes." (citation and quotation marks omitted)); *Avey v. State*, 249 Md. 385, 388, 240 A.2d 107 (1968) ("[W]here intoxication exists to a degree that it deprives the accused of his capacity to form a specific intent, he cannot be convicted of a crime requiring that intent[.]" (citations and quotation marks omitted)); [6] *Lipscomb v. State*, 223 Md. 599, 603–04, 165 A.2d 918, 921 (1960) ("[E]ven if [the defendant] was drunk on these occasions, it is the general rule that voluntary drunkenness does not relieve an individual of responsibility for his crimes."); *Beall v. State*, 203 Md. 380, 386, 101 A.2d 233, 236 (1953) ("As a defense to intent here the accused must show that he was so intoxicated that he was robbed of his mental faculties. He is criminally responsible as long as he retains control of his mental faculties sufficiently to appreciate what he is doing.").[7]

---

**6.** This case was superseded by statute on other grounds. *See Treece v. State*, 313 Md. 665, 684–86, 547 A.2d 1054, 1064 (1988).

**7.** Petitioner does not cite any cases supporting a different standard. He cites our decision in *Calloway v. State*, 414 Md. 616, 996 A.2d 869 (2010), arguing that "questions of fact traditionally decided by a jury [must] actually be submitted to that jury." Yet *Calloway* addressed the permissible scope of questions that a defendant may put to a State's witness on cross-examination, and said nothing about the standard for determining whether a jury instruction is generated. *See Calloway*, 414 Md. at 639, 996 A.2d at 881–82. Nor is Petitioner helped by *Smith v. State*, 196 Md.App. 494, 10 A.3d 798 (2010), *rev'd on other grounds*, *Smith v. State*, 423 Md. 573, 32 A.3d 59 (2011). In that case, the Court of Special Appeals held: "[E]ven assuming an inference could be drawn that appellant was intoxicated, suffice it to say that no reasonable juror could infer from [the] testimony that appellant was so intoxicated that he was robbed of his mental faculties or that he did not appreciate what he was doing. Accordingly, the voluntary intoxication instruction was not generated by the evidence in this case." *Id.* at 532, 10 A.3d at 820 (citations and quotation marks omitted). Finally, in

 In light of the high degree of intoxication required to negate a specific intent, we agree with the reasoning of the Court of Special Appeals in *Lewis* that the mere consumption of alcohol, "with no evidence as to the [effect] of that alcohol on the defendant, would not permit a jury reasonably to conclude that he had lost control of his mental faculties to such an extent as to render him· unable to form the intent[.]" *Lewis*, 79 Md.App. at 13 n. 4, 555 A.2d at 515, 515 n. 4. A defendant is not entitled to an instruction on voluntary intoxication unless he can point to "some evidence" [8] that "would allow a jury to rationally conclude" [9] that his intoxication made him incapable of "form[ing] the intent necessary to constitute the crime[.]" [10] *See also* 4 Oscar L. Warren & Basil M. Bilas, *Warren on Homicide* § 332 (1938) ("With regard to charging on the defense of intoxication, the usual rule applies that the charge must be based on and applicable to the evidence, and such a charge is properly refused where there is no evidence tending to show such intoxication."). Mere drunkenness does not equate to the level of intoxication necessary to generate a jury instruction on intoxication as a defense to a crime.

 In this case, the evidence is insufficient to allow a jury to rationally conclude that Petitioner was so severely impaired that he could not form the intent necessary to constitute his crimes. To be sure, Petitioner's blood alcohol content of .157 was nearly twice the legal driving limit. *See* Maryland Code (1977, 2009 Repl.Vol.), § 11–174.1 of the Transportation Article (setting the limit at .08). Illogical behavior and memory

---

*People v. Loden*, 27 Ill.App.3d 761, 327 N.E.2d 58, 61 (1975), also cited by Petitioner, the defendant argued that the intoxication instruction should **not** have been given because "he was not offering intoxication as a defense." Thus, the appellate court was tasked with determining whether the trial court, by giving the instruction, had prejudiced the defendant's other trial strategies, a situation clearly different from this case. *Id.*

8. *See Dykes v. State*, 319 Md. 206, 216–17, 571 A.2d 1251, 1257 (1990).

9. *See Dishman v. State*, 352 Md. 279, 292–93, 721 A.2d 699, 705 (1998).

10. *See Hook v. State*, 315 Md. 25, 31 n. 9, 553 A.2d 233, 236 n. 9 (1989).

loss are also generally associated with excessive alcohol consumption.[11] Yet Petitioner has not shown that such phenomena, which are undoubtedly "some evidence" that he was drunk, are also "some evidence" that he was unable to form a specific intent. Essentially, all Petitioner has shown is that he was drunk and exhibited the typical characteristics of being drunk. This is not evidence that he was unable to form a specific intent, and is therefore insufficient to raise a jury issue on voluntary intoxication as a defense to a specific intent crime.

■■■ Regarding Butler's testimony that Petitioner was "bleeding" and "almost about to pass out," we agree with the Court of Special Appeals that those statements, in the context of describing Petitioner's appearance after having just been stabbed, "plainly appear to refer to [his] injured state." We do not decide whether, in some circumstances, describing a defendant as about to pass out **from alcohol** could be sufficient to generate a jury issue on voluntary intoxication. We simply hold that when a person has just been attacked and stabbed, and then walked bleeding to a friend's house, a general description of him as "bleeding" and "about to pass out," without more specification, is insufficient to constitute "some evidence" that he was so intoxicated that he could not form a specific intent.

Moreover, some of Petitioner's actions on the night in question are inconsistent with the intoxication defense. To begin with, when Petitioner was attacked and stabbed after leaving the mall, he was able to recognize the gender of his two attackers, escape by running (not walking) away from them, and then locate Ms. Butler's house on foot in the dead of night while severely injured. Surely this was no easy task, and his ability to complete it, immediately after having consumed all the alcohol that he claims to have consumed, is flatly inconsistent with his assertion that he was so extremely intoxicated that he was unable to form a specific intent. *See*

---

11. *See, e.g.,* National Institutes of Health, *Information about Alcohol,* http://science.education.nih.gov/supplements/nih3/alcohol/guide/info-alcohol.htm.

*Kreijanovsky v. State*, 706 P.2d 541, 544 (Okla.Crim.App.1985) (holding that "appellant's testimony negated the [intoxication] defense by demonstrating he was in control of his mental faculties"); *State v. Davis*, 81 Ohio App.3d 706, 612 N.E.2d 343, 345 (1992) (defendant's ability to be "properly oriented regarding his location" and "fully aware of the facts and circumstances occurring around him" was inconsistent with the intoxication defense); *State v. Netter*, 79 So.3d 478, 483 (La.Ct.App.2011) (testimony that the defendant "was not stumbling or staggering" was inconsistent with the intoxication defense); *State v. Williamson*, 668 S.W.2d 597, 600 (Mo.Ct.App.1984) (defendant's ability to spend the afternoon "chopping wood and dismantling a fireplace" was inconsistent with the intoxication defense).

Petitioner's ability to speak intelligibly while allegedly intoxicated also contradicts his intoxication theory. Petitioner's speech, even after he had consumed all the alcohol that he claims to have consumed, was understandable to both Eggleston and Detective Guevara, as Eggleston was able to repeat Petitioner's words verbatim at trial, and Guevara testified that Petitioner had explained the details of being robbed by one male and one female on "the footbridge that goes across Little Patuxent Parkway from the waterfront towards the mall." Such clear, detailed speech is inconsistent with the level of intoxication required to negate a specific intent. *See Netter*, 79 So.3d at 483 (holding that the evidence did not generate an intoxication instruction because, among other things, a witness testified that "you could ... understand what [the defendant] was talking about").

Furthermore, Petitioner's decision to wear a bandana over his face and wrap a shirt around the weapon that he used to stab Eggleston demonstrates a significant amount of design in planning the crime, which is inconsistent with the assertion that he was unable to form any specific intent that night.[12]

---

**12.** Here we assume, as Petitioner does when arguing for the intoxication instruction, that he was indeed the attacker, notwithstanding his alternative argument that he did not see Eggleston at all that night. Of

*See Terry v. State,* 465 N.E.2d 1085, 1088 (Ind.1984) (holding that the defendant's ability to give directions and make "decisions on a course of action for himself" was inconsistent with the intoxication defense); *see also Shell,* 307 Md. at 62, 512 A.2d at 366 ("The question ... is whether a defendant has reached that stage of intoxication that renders him incapable of forming the requisite *mens rea* which is a necessary element of all specific intent crimes." (citation and quotation marks omitted)). Finally, Petitioner's memory loss was not complete, as he was able to remember being interviewed by police on the night in question. Indeed, his own explanation of his memory loss—"I don't recall much after I got stabbed"—seems to contradict his assertion that it was the alcohol, not the stabbing, that caused him to forget certain things.

Thus, not only is there insufficient evidence, standing alone, to support his intoxication theory, but there is also ample evidence, uncontradicted at trial, that is inconsistent with the intoxication defense. Even taking for granted everything Petitioner claims about his drunken state—that he behaved illogically, was unable to recall some of his behavior, was "about to pass out" after being stabbed, and had a blood alcohol content of .157, twice the legal driving limit—we are left with insufficient evidence to "rebut the presumption that a man intends the natural consequence of his act." *See Hook,* 315 Md. at 31 n. 9, 553 A.2d at 236 n. 9; *Davis,* 612 N.E.2d at 345 (refusing to instruct on intoxication even though the defendant had a .15 blood alcohol content); *Toler v. State,* 623 So.2d 408, 411 (Ala.Crim.App.1993) (refusing to instruct on intoxication even though the defendant had "way too much to drink" and "could not remember some things that occurred").

---

course, Petitioner did not testify about his level of intoxication at the precise time of the crime because he denied having seen Eggleston at all. This lack of testimony would have further hampered the factfinder's ability to evaluate whether Petitioner "was so intoxicated, **at the time of the act,** that [he] ... was unable to form the necessary intent." Maryland Criminal Pattern Jury Instruction 3.31.1 (emphasis added).

██ Petitioner was indeed drunk on the night the crimes were committed, but "[g]enerally, voluntary drunkenness is no defense to a criminal charge. . . . [T]he degree of intoxication which must be demonstrated to exonerate a defendant is great." *State v. Gover*, 267 Md. 602, 606–07, 298 A.2d 378, 381 (1973). Petitioner simply cannot point to evidence sufficient to satisfy that standard, leaving us with no basis to hold that the trial court abused its discretion in refusing to give the instruction. *See Dickey v. State*, 404 Md. 187, 199, 203–04, 946 A.2d 444, 451, 454 (2008) (holding that the requested instruction was not required, under Rule 4–325(c), because "[e]ven assuming that the requested instruction was a correct statement of law, the trial judge exercised his discretion properly"); *Perry v. State*, 344 Md. 204, 242, 686 A.2d 274, 292 (1996) (holding that the requested instruction "did not state the applicable law, and the trial court was not required to grant it" (citing Rule 4–325(c))).

### Testimony on Witness Certainty

██ The Court of Special Appeals held that Petitioner's objection to Eggleston's testimony was not preserved because the trial court requested grounds for the objection and none were provided. Thus, the court held, under Maryland Rule 5–103(a), the objection was not preserved for appeal. The court also provided an alternative ground for its judgment, holding that even if the objection had been preserved, it was rightly overruled, as testimony about a witness's certainty is admissible.

Petitioner contends that his objection was preserved because, although the trial court "invited defense counsel to approach the bench for the apparent purpose of affording an opportunity to elaborate on her objection, the court did not **direct** her to do so" (emphasis added). Thus, Petitioner argues that the objection was preserved under *Gutierrez v. State*, 423 Md. 476, 32 A.3d 2 (2011), and *Johnson v. State*, 408 Md. 204, 969 A.2d 262 (2009). Furthermore, Petitioner argues on the merits that testimony about a witness's certainty is

unreliable and prejudicial and should not be admitted, citing persuasive authority.

The State responds that the objection is not preserved because the trial court requested grounds and defense counsel declined to provide them. The State argues that, under *Boyd v. State,* 399 Md. 457, 474–76, 924 A.2d 1112, 1122–23 (2007), and other cases, the trial court's statement that it "would overrule" the objection unless grounds were provided constituted a request for grounds, triggering the requirement that counsel provide grounds to preserve the objection. In the alternative, the State argues that even if the issue is preserved, the trial court "did not abuse its discretion in permitting the victim to testify to the certainty of his identification[.]"

We shall not reach the State's alternative grounds, as this issue may be resolved by application of Maryland Rule 5–103(a). This rule, applicable in civil and criminal cases,[13] provides in pertinent part:

> Error may not be predicated upon a ruling that admits or excludes evidence unless ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was requested by the court or required by rule[.]

Maryland Rule 5–103(a), (a)(1). Similarly, Rule 4–323, applicable in criminal cases only,[14] provides in pertinent part:

> The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs.

 As we said in *Boyd:*

> [A] contemporaneous general objection to the admission of evidence ordinarily preserves for appellate review all

---

**13.** *See Boyd v. State,* 399 Md. 457, 475–76, 924 A.2d 1112, 1122–23 (2007).

**14.** *See Boyd,* 399 Md. at 475, 924 A.2d at 1122.

grounds which may exist for the inadmissibility of the evidence. Under Rules 2–517,[15] 4–323, 5–103(a)(1), and this Court's opinions, the only exceptions to the principle that a general objection is sufficient are where a rule requires the ground to be stated, where the trial court requests that the ground be stated, and where the objector, although not requested by the court, voluntarily offers specific reasons for objecting to certain evidence[.] (Citations and quotation marks omitted.)

*Boyd,* 399 Md. at 476, 924 A.2d at 1123; *see also Wilt v. Wilt,* 242 Md. 129, 133–34, 218 A.2d 180, 183 (1966) ("[I]t is not necessary . . . to state the grounds for objections to evidence unless requested by the trial court, but when a request is made therefor, the objector should state all the reasons . . . for objecting; for, if he does not, he would ordinarily be regarded as having waived any objections he had not stated.").

In this case, it is clear that the trial court requested grounds for defense counsel's objection to Eggleston's testimony:

[Prosecutor]: How certain are you, Mr. Eggleston, that the individual that stabbed you was Chaz Bazzle?

[Defense counsel]: Objection.

[The court]: Do you want to approach?

[Defense counsel]: No, Your Honor.

[Prosecutor]: I'm not sure I understand the basis for the objection, Your Honor.

[The court]: Without grounds, I would overrule.

[The witness]: Yes.

[Prosecutor]: How certain are you?

[The witness]: Very certain.

Although the trial court did not say the exact words, "I request grounds," this is not required. In this case, the trial court specifically offered to hear grounds for the objection,

---

**15.** Rule 2–517 applies in civil cases only. *See Boyd,* 399 Md. at 475, 924 A.2d at 1122.

and said that without grounds, it would overrule. That was sufficient to put defense counsel on notice that the objection would not be preserved, under Rules 5–103(a) and 4–323, unless grounds were provided.

As the State points out, "a principal purpose of the preservation requirement is to prevent 'sandbagging' and to give the trial court the opportunity to correct possible mistakes in its rulings." *See Fisher v. State*, 367 Md. 218, 240, 786 A.2d 706, 719 (2001). We agree with the State that "to the extent that Bazzle made a strategic decision to avoid stating a basis for his objection at trial so that appellate review would not be limited to the stated basis, such gamesmanship should be rejected." As we said in *Robinson v. State*, 410 Md. 91, 104, 976 A.2d 1072, 1080 (2009):

> It would be unfair to the trial court and opposing counsel . . . if the appellate court were to review on direct appeal an un-objected to claim of error under circumstances suggesting that the lack of objection might have been strategic, rather than inadvertent. . . . [I]f the failure to object is, or even might be, a matter of strategy, then overlooking the lack of objection simply encourages defense gamesmanship. (Citations and quotation marks omitted.)

*See also State v. Rose*, 345 Md. 238, 250, 691 A.2d 1314, 1320 (1997) (observing that failing to adhere to preservation rules "would allow defense attorneys to remain silent in the face of the most egregious and obvious . . . errors at trial" and that "[a]ny resulting conviction would always be vulnerable to challenge because of the absence of an 'intelligent and knowing' waiver by the defendant himself").

Although Petitioner cites an intriguing amalgamation of authorities supporting the concept that testimony regarding witness certainty is inaccurate and prejudicial, without a preserved objection to such testimony, we leave that question for another day. As to the preservation of the objection, Petitioner cites *Gutierrez* and *Johnson*, but those cases say nothing about what constitutes a request for grounds. In *Gutierrez*, we simply stated that the trial court "did not ask [for] the

ground(s) for [the] objection," 423 Md. at 488–89, 32 A.3d at 9, and in *Johnson*, we simply stated that the trial court "overruled the objection without directing that the grounds . . . be stated," 408 Md. at 223, 969 A.2d at 272–73. These cases do not support Petitioner's argument that the trial court did not request grounds within the meaning of Rules 5–103(a) and 4–323.

## Conclusion

Petitioner failed to generate an instruction on voluntary intoxication because the evidence was insufficient to permit a jury to rationally conclude that his intoxication made him incapable of forming the intent necessary to constitute his crimes. Petitioner also failed to preserve his objection to Eggleston's testimony because the trial court, by stating that it would overrule the objection without grounds, triggered the requirement, under Rules 5–103(a) and 4–323, for Petitioner to provide grounds or lose the opportunity to raise the objection on appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

HARRELL, BARBERA, and McDONALD, JJ., Dissent.

McDONALD, J., dissenting, in which HARRELL and BARBERA, JJ., join.

Under current Maryland law, a defendant charged with a specific intent crime is not guilty of the offense if the defendant is so intoxicated, at the time of the act, that the defendant lacked the necessary intent. *State v. Gover*, 267 Md. 602, 298 A.2d 378 (1973). Under Maryland Rule 4–325(c), a trial court must instruct the jury concerning intoxication and specific intent crimes if the defendant requests such an instruction and there is sufficient evidence to allow a jury to find that the defendant lacked specific intent for that reason. As the majority explains, a defendant need only be able to point to "some evidence," even if that evidence is overwhelmed by evidence to the contrary.

The evidence of intoxication at the trial of this case included consumption of at least three 40–ounce containers of beer in an evening (in addition to other alcoholic beverages), a blood alcohol level of twice the legal limit for driving, and the appearance of being about to pass out. The majority makes the best case that can be made, as did the State in its presentation, for the proposition that such evidence falls short of the "some evidence" standard. But I am not convinced. A reasonable juror might well be persuaded that, in light of the other evidence produced at trial, Bazzle had the requisite intent, despite his drunken state. That, however, is a different question from whether an instruction on voluntary intoxication should have been given under the "some evidence" standard.

It may be that the reluctance to find that the "some evidence" standard is met here is, at root, discomfort with the current Maryland law on voluntary intoxication and specific intent crimes.[1] Perhaps it is appropriate to revisit that law. As one commentator has noted, "[o]n perhaps no other legal issue have courts so widely differed, or so often changed their views, as that of the legal responsibility of intoxicated offenders." Keiter, *Criminal Law: Just Say No Excuse: The Rise and Fall of the Intoxication Defense,* 87 J.Crim. L. & Criminology 482 (1997); *see also Montana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (voluntary intoxication defense not required by due process); Note, *Law on the*

---

1. The out-of-state cases cited in the majority opinion reflect a similar discomfort, but are distinguishable in various respects from this case. Unlike this case, in those cases state law classified voluntary intoxication as a disfavored defense, the defendant failed to ask for the instruction, or there was scant evidence of consumption *State v. Davis,* 81 Ohio App.3d 706, 612 N.E.2d 343, 348 (1992) (under Ohio law, voluntary intoxication is considered a "suspect" defense and a trial court's refusal to give an instruction on that defense is reviewed under a lenient abuse of discretion standard); *Kreijanovsky v. State,* 706 P.2d 541, 544 (Okla.Crim.App.1985) (trial court not required to give instruction *sua sponte* under facts of case); *State v. Williamson,* 668 S.W.2d 597, 599 (Mo.Ct.App.1984) (defendant claimed to have consumed two beers); *State v. Netter,* 79 So.3d 478, 482–83 (La.Ct.App.2011) (no evidence introduced that defendant actually ingested anything to produce intoxicated appearance).

*Rocks: The Intoxication Defenses are Being Eighty–Sixed,* 55 Vand. L.Rev. 607 (2002). Unless we are willing to reconsider the merits of the intoxication defense—and first allow the parties an opportunity to address that possibility—I would reverse and order a new trial.

Judge HARRELL and Judge BARBERA have indicated that they join this opinion.