*Meghan Handy, et al. v. Box Hill Surgery Center LLC, et al.,* Case No. 0973. September Term 2021.  Opinion by Wells, C.J.

**CIVIL LAW – TORT – NEGLIGENCE – INTERVENING CAUSE**

An intervening force is one "which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Section 441 of the Restatement (Second) of Torts. Importantly, an intervening force "may or may not be a superseding cause which relieves the actor from liability for another's harm occurring thereafter." *Id.* cmt. d.

**CIVIL LAW – TORT – NEGLIGENCE – SUPERSEDING CAUSE**

A superseding cause is "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Section 440 of the Restatement (Second) of Torts.

**TRIAL – JURY INSTRUCTIONS – ABUSE OF DISCRETION**

Whether a jury instruction is correctly given is determined by a three-part test: (1) the requested jury instruction must be a correct exposition of the law; (2) the particular law must have been applicable to the evidence before the jury; and (3) the substance of the requested instruction must not have been fairly covered by the instructions actually given. Here, there was sufficient evidence of an intervening and superseding cause to justify the trial court giving the pattern jury instruction (MPJI-Cv 19:11).

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0973

September Term, 2021

_____

MEGHAN HANDY, ET AL.

v.

BOX HILL SURGERY CENTER LLC, ET AL.

_____

Wells, C.J.,
Berger,
Leahy,

JJ.

_____

Opinion by Wells, C.J.

_____

Filed: July 27, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from a medical malpractice suit brought by representatives[1] of Brenda Rozek ("appellants" or "plaintiffs"), who died on September 16, 2012, against Dr. Ritu Bhambhani, M.D., her private practice, Ritu T. Bhambhani, M.D., LLC, and her surgery center, Box Hill Surgery Center LLC (collectively "appellees" or "defendants"). On appeal, appellants raise one question for our review: "Whether the Trial Court Erred as a Matter of Law by Instructing the Jury on the Intervening Superseding Cause Defense and Including the Question on the Verdict Sheet?" For the following reasons, we affirm.[2]

## FACTUAL BACKGROUND

Because this case rests on whether it was proper for the trial court to include a jury instruction on intervening and superseding cause, the timeline of events is crucial to our analysis. The recitation of the factual background is thus most useful if it is presented chronologically.

**Brenda Rozek's Death**

Doctor Ritu T. Bhambhani, M.D. is a licensed anesthesiologist and pain management physician located in Maryland. Before opening her own practice in 2008, Dr. Bhambhani worked at two other facilities beginning in mid-2000. Dr. Bhambhani testified that during the years prior to opening her own practice, she had regularly injected patients

---

[1] Brenda Rozek's representatives are: Meghan Handy and Kristen Lowery, Brenda's daughters; Frank Ragan and JoAnne Ragan, Brenda's parents; and Neil E. Rozek, Brenda's husband.

[2] In the event that we hold that it was not error to instruct the jury on intervening and superseding cause, appellants do not ask us to hold that it was error to include intervening and superseding cause on the verdict sheet. Therefore, we answer both inquires by addressing the instruction only.

with preservative-free methylprednisolone acetate ("MPA"), a steroid, sourced from New England Compounding Center ("NECC"), a compounding pharmacy.[3] In 2008, Dr. Bhambhani opened her own private practice, Ritu T. Bhambhani, M.D., LLC, and a surgery center, Box Hill Surgery Center LLC. In supplying her practice, Dr. Bhambhani reached out to previous employers so she could "continue using the same [supplies]", which included MPA from NECC. Dr. Bhambhani placed her first order of MPA from NECC in January of 2009. Dr. Bhambhani further testified that between 2009 and 2012, when she first saw Brenda Rozek as a patient, she continually used preservative-free MPA supplied from NECC.

On June 29, 2012, NECC manufactured lot #06292012 of MPA. At some point in its manufacturing, lot #06292012 was contaminated with fungi. On August 13, 2012, Dr. Bhambhani ordered a shipment of MPA from NECC. The order was filled by NECC the same day, using the contaminated vials from lot #06292012. In filling the order, NECC failed to terminally sterilize the contents of the vials.

Dr. Bhambhani saw Brenda Rozek, a new patient, for a consultation regarding chronic neck and arm pain on August 20, 2012. Dr. Bhambhani recommended an epidural steroid injection to address her pain. Dr. Bhambhani administered the injection on August 31, 2012, using MPA from her August 13 NECC order which included vials from lot

---

[3] Compounding pharmacies are pharmacies that manufacture drugs through compounding. Drug compounding is the "process of combining, mixing, or altering ingredients to create a medication tailored to the needs of an individual patient." *Compounding and the FDA: Questions and Answers*, U.S. Food and Drug Administration, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers. Notably, "compounded drugs are not FDA-approved." *Id.*

#06292012. In the week following the injection, Rozek developed a headache followed by symptoms such as "nausea, vomiting, weakness on her right side, double vision, and problems with balance." By September 8, 2012, Rozek was admitted to Union Hospital in Elkton, Maryland. Three days later, Rozek was transferred to Johns Hopkins Hospital in Baltimore. Rozek's illness rapidly progressed, and she passed away on September 16, 2012. Rozek's autopsy report revealed that she died from fungal meningitis.[4]

**Trial**

At trial, plaintiffs' theory of negligence rested on Dr. Bhambhani's use of drugs from a compounding pharmacy, which plaintiffs argued constituted a breach of the standard of care because, in their view, drugs from compounding pharmacies are inherently riskier and should only be used in limited cases, such as a when the patient has an allergy. Dr. Bhambhani's defense was primarily that NECC's conduct was an intervening and superseding cause of Rozek's death. The defense requested a jury instruction on intervening and superseding cause, which the court granted over plaintiffs' objection. After objecting, counsel for plaintiffs asked the court what it believed was the intervening cause. The court responded:

> Well, there's two. The intervening cause, as I find it, I follow [defense counsel]'s argument that the intervening cause is when -- if you allege that Dr. Bhambhani's breach of the standard of care occurred when she placed

---

[4] Brenda Rozek's illness and death was not an isolated incident. In fall 2012, patients around the country fell ill with fungal meningitis. A federal investigation "traced the outbreak's cause to patients having been injected with a heavily contaminated medication that NECC had compounded. That medication was methylprednisolone acetate ("MPA")[.]" *United States v. Cadden*, 965 F.3d 1, 7 (1st Cir. 2020). In all, fourteen individuals were indicted "for their roles in alleged criminal conduct connected to NECC's compounding operations." *Id.* at 8.

3

the order that was injected into Brenda Rozek and then if you follow what [defense expert] testified to as what the process, the manufacturing process would be, the very last step of the manufacturing process is shipping it out. And so Dr. Bhambhani placed an order. NECC shipped that order, really knowing, according to the evidence that I saw and that I heard, knowing or certainly should have been aware of the fact that they were not following the proper manufacturing process, that they had an outbreak of fungal -- of fungus bacteria in what was supposed to be the clean room. And there's an email to that effect. And so that's the number one intervening cause.

Now, if you also follow -- and I recall very well because I wrote it down -- that the breach of the standard of care took place or occurred when Dr. Bhambhani began to order from the compounder in 2008, which was the testimony of the Plaintiff's standard of care doctor, then the intervening cause was certainly NECC's negligence or intentional, from what I heard, acts of having a negligent manufacturing process and then shipping the contaminated substance, which they should have been able to find had they followed the proper process or procedure. That was testified to by [defense expert], that they should have been able to find that or should have known that. Quite frankly, the testimony and evidence is that they intentionally sent it anyway without regard of anyone's safety. So it's really twofold, the intervening cause.

Plaintiffs rebutted by arguing that they presented evidence that it was below the standard of care to *inject* Rozek with the compounded medicine, and thus there could be no intervening force as there was no conduct by NECC between the time Dr. Bhambhani injected Rozek and her death. To this point, the court noted:

I just want to remind you that there has been more than one theory of breach of standard of care placed before this jury and so it's important to remember that. And if you're trying to parse out one particular allegation concerning the injection that Dr. Bhambhani placed in Mrs. Rozek, then it's really not appropriate because there's been more than one theory from the Plaintiff[s] concerning the breach of standard of care.

After the trial court decided to instruct the jury on intervening and superseding cause, plaintiffs requested that the verdict sheet be arranged so that the question of

4

intervening and superseding cause would come *after* the jury assessed damages. Their reasoning was as follows:

> If the jury finds there's no negligence or there's no harm, it doesn't matter what they rule on [intervening and superseding cause]. I would like them to have a chance to answer all the questions. Since that last question is dispositive, I'd like that to be the last question on the verdict sheet.
>
> . . .
>
> We spent a lot of time and a lot of money putting experts on. I think the jury should answer all the questions, including damages, and if you get to that last question intervening superseding cause and they check yes, we don't get any of that recovery anyway but then we have a clean verdict we can go to appeal for. And if the appellate court disagrees with you, then we still have a verdict. We don't need to incur all the expense and all the time of trying the case again. And frankly, Your Honor, I think reasonable minds may differ with your decision on intervening superseding cause. I respect your decision. I understand your decision. We obviously disagree, but to have to go forward again if you're wrong on this issue and bring all these experts back in and pick another jury and go through another trial, it's going to be an incredible expense. It's going to be an incredible waste of time. Another jury's going to be needed and we can avoid it without any real prejudice or harm if that is the last question on the verdict sheet.

The trial court denied plaintiffs' request to place the intervening and superseding cause question after the damages questions. The trial court gave Maryland Pattern Jury Instruction 19:11,[5] "Intervening/Superseding Cause" verbatim and placed the intervening and superseding cause question on the verdict sheet before damages.

---

[5] MPJI-Cv 19:11, "Intervening/Superseding Cause" reads:

There can be additional causes for the injury that occur after the defendant's conduct. If a later event or act could have been reasonably foreseen, the defendant is not excused for responsibility for any injury caused by the defendant's negligence. But if an event or act is so extraordinary that it was

5

During deliberations, the jury sent a note to the trial court asking: "does the superseding or extraordinary cause need to occur later than the event or act of the Defendant?" After consulting with counsel, the trial court told the jury to refer to the jury instruction on intervening and superseding cause "for the answer to this question."

The jury returned a verdict that found that Dr. Bhambhani breached the standard of care in the treatment of Rozek and that Dr. Bhambhani's breach caused the illness and death of Rozek. However, the jury also found that NECC's negligence was an intervening and superseding cause of Rozek's illness and death. Dr. Bhambhani was thus found not liable.[6] Appellants then filed this timely appeal.

## STANDARD OF REVIEW

The question before us is whether the trial court erred in instructing the jury on intervening and superseding cause. A trial court's decision to include a particular jury instruction is reviewed under an abuse of discretion standard. *Six Flags Am., L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569, 588–89 (2020) (citing *Woolridge v. Abrishami*, 233 Md. App. 278, 305 (2017)). An abuse of discretion occurs if the trial court's discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Collins v. Nat'l R.R. Passenger Corp.*, 417 Md. 217, 228 (2010). In exercising discretion,

---

not reasonably foreseeable, the defendant's conduct is not a legal cause of the injury.

[6] Although not germane to the issues raised by appellants, the jury also found that Dr. Bhambhani did not fail to obtain informed consent from Rozek prior to administering the injection.

the trial court assesses whether the evidence produced at trial "warrants a particular instruction on legal principles applicable to that evidence and to the theories of the parties." *Id.* Moreover, Rule 4-325(c)[7] has been interpreted "to require that a requested instruction be given only when there is evidence in the record to support it." *Copsey v. Park*, 228 Md. App. 107, 119 (2016) (quoting *Flores v. States*, 120 Md. App. 171, 193 (1998)). In reviewing whether the evidence supports the trial court's inclusion of a jury instruction, we must "determine whether . . . [there exists] that minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired." *Id.* (quoting *Bazzle v. State*, 426 Md. 541, 550 (2012)) (alteration in *Copsey*).

## DISCUSSION

**The Trial Court did not Abuse its Discretion in Instructing the Jury on Intervening and Superseding Cause because, at Trial, Appellants Presented Evidence Alleging Multiple Instances of Breach and Appellees Presented Evidence that NECC's Conduct was Unforeseeable.**

### A. Parties' Contentions

Appellants argue that the trial court erred in instructing the jury on the affirmative defense of intervening and superseding cause. Appellants first contend that the court fatally erred in giving the intervening and superseding cause instruction because an intervening

---

[7] Rule 4-325(c) provides:

> The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

7

act must occur *after* the defendant's conduct, and appellees offered no evidence at trial that there was any conduct by NECC between the time that Dr. Bhambhani injected Rozek with the contaminated MPA and her death. Appellants maintain that it was Dr. Bhambhani's "negligent use, not simply her purchase, of NECC's compounded MPA that caused Brenda Rozek's infection and death." In appellants' view, the ordering of the MPA is not the operative instance of breach because if Dr. Bhambhani had simply ordered the MPA, but had not injected Rozek with it, she would not have become sick and died.

Second, appellants argue that NECC's conduct was not a superseding cause of Rozek's illness and death because Dr. Bhambhani breached the standard of care by using a drug sourced from a compounding pharmacy. In appellants' view, "[i]f a contaminated compounded medicine qualified as a superseding cause, it would completely circumvent and nullify the standard of care" that required Dr. Bhambhani to source drugs from a non-compounding pharmacy. According to appellants, it was entirely foreseeable that ordering medicine from a compounding pharmacy would result in receiving a contaminated product. Finally, appellants argue that the case should be remanded to the circuit court for a partial trial on damages only as the jury already found that Dr. Bhambhani was negligent and that her negligence caused Rozek's death.[8]

Appellees argue that the trial court was within its discretion to instruct the jury on intervening and superseding cause because appellants' expert testified to several potential breaches of the standard of care that occurred *before* NECC's negligent conduct. According

---

[8] Because we hold that the trial court did not abuse its discretion in instructing the jury, we need not reach this issue.

to appellants, because the jury found that Dr. Bhambhani did not fail to provide informed consent regarding the risks of the compounded drug, any such conduct by Dr. Bhambhani after NECC's negligent conduct is negated. Appellees argue that at trial, they presented evidence that NECC "negligently failed to terminally sterilize the MPA Dr. Bhambhani ordered on August 13, 2012, after NECC transferred the MPA to the vials and before distributing them to Dr. Bhambhani." (Emphasis in original).

Appellees argue next that NECC's actions were extraordinary and a superseding cause of Rozek's death. Appellees point to expert testimony offered at trial on NECC's negligent and/or intentional conduct and why it was not foreseeable. This evidence, in appellees' view, "satisfied the burden of proof on the affirmative defense of intervening/superseding cause[,]" thereby allowing the trial court to instruct the jury on intervening and superseding cause and place the question on the verdict sheet.

## B. Analysis

Our analysis of whether a jury instruction is correctly given is guided by a three-part test: "(1) the requested jury instruction must be a correct exposition of the law; (2) the particular law must have been applicable to the evidence before the jury; and (3) the substance of the requested instruction must not have been fairly covered by the instructions actually given." *Collins*, 417 Md. at 229. The first and third requirements are easily satisfied as the appellants neither dispute that the instruction was a correct exposition of the law nor that it was already covered in the instructions given. Therefore, we will focus our attention on the second requirement, whether an intervening and superseding instruction was applicable in light of the evidence that was presented before the jury. We

9

turn first to whether there existed the minimum threshold of evidence that could lead a jury to rationally conclude that NECC's conduct was an intervening force.

### 1. *Intervening Force*

Section 441 of the Restatement (Second) of Torts defines an intervening force as a force "which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Importantly, an intervening force "may or may not be a superseding cause which relieves the actor from liability for another's harm occurring thereafter." *Id.* cmt. d. Appellants rightly point out that in order for conduct to constitute an intervening cause, it must, by definition, occur *after* the defendant's acts or omissions. *Reiss v. Am. Radiology Servs., LLC*, 241 Md. App. 316, 340–41 (2019); *see also* MPJI-Cv 19:11. It follows then that Dr. Bhambhani is liable if no evidence of NECC conduct was presented between the time of Dr. Bhambhani's alleged breach and Rozek's death. In appellants' view, the operative alleged breach was the injection of MPA by Dr. Bhambhani, and there is no evidence of any conduct by NECC between the injection and Rozek's death. Appellants also take issue with the trial court's determination that the intervening force was the *shipping* of the contaminated order.[9] Appellees, however, contend that at trial plaintiffs presented multiple potential breaches by Dr. Bhambhani, some of which occurred before NECC's conduct.

---

[9] We think both Appellants and the trial court were incorrect. At trial, defendants' expert opined that, upon receiving the order, NECC transferred the MPA into smaller vials, which then should have been terminally sterilized, but were not. Thus, the intervening conduct is not the shipment of the contaminated MPA, but the failure to terminally sterilize in filling Dr. Bhambhani's order.

To see if plaintiffs alleged more than one instance of breach, and whether any of those instances occurred before NECC's conduct, we turn to the record. At trial, plaintiffs' expert, Dr. Saberski, testified to the following:

> [PLAINTIFFS' COUNSEL]: Would it be a violation of the standard of care for a doctor to order a compounded medicine without a patient specific prescription in 2012?
>
> [DR. SABERSKI]: Yes.
>
> . . .
>
> [PLAINTIFFS' COUNSEL]: Are compounded medicines supposed to be used for office supplies?
>
> [DR. SABERSKI]: No. A compounder cannot provide a stock supply of medication. It only can supply medications specific to your patient's need.
>
> . . .
>
> [PLAINTIFFS' COUNSEL]: Was Dr. Bhambhani's purchase of NECC's steroids in 2008 to 2012, was that a breach of the standard of care?
>
> [DR. SABERSKI]: Yes.
>
> . . .
>
> [PLAINTIFFS' COUNSEL]: Dr. Saberski, just to make sure that I have gotten all of my opinions before I sit down, sir, it is your opinion that Dr. Bhambhani breached the standard of care in purchasing a bulk supply of NECC's steroids?
>
> [DR. SABERSKI]: Yes, sir.
>
> [PLAINTIFFS' COUNSEL]: It is your opinion that she breached the standard of care, sir, by not understanding the difference between an FDA approved drug and a compounded drug?
>
> [DR. SABERSKI]: Yes, sir.

[PLAINTIFFS' COUNSEL]: It is your opinion that she breached the standard of care in injecting Brenda Rozek with NECC's compounding medicine?

[DR. SABERSKI]: Yes, sir.

. . .

[PLAINTIFFS' COUNSEL]: And in your opinion did those breaches cause harm to Brenda Rozek?

[DR. SABERSKI]: Yes.

From Dr. Saberski's testimony, one can identify five instances of alleged breach of the standard of care: (1) Dr. Bhambhani's purchase of MPA from NECC in 2012; (2) Dr. Bhambhani's purchase of MPA from NECC from 2008-2012; (3) Dr. Bhambhani's purchase of a bulk supply of MPA from NECC; (4) Dr. Bhambhani's ignorance as to the difference between an FDA approved drug and a compounded drug; and (5) Dr. Bhambhani injecting Rozek with the MPA from NECC. At least one of these potential breaches occurred before NECC's alleged intervening conduct in late June 2012: Dr. Bhambhani's purchase of MPA from NECC beginning in 2008.[10]

Before this Court, appellants direct our attention away from any event predating the injection, which they insist is the operative breach. Appellants note:

[t]o be sure, Dr. Bhambhani's bulk order of compounded steroids without a patient-specific need and without a patient-specific prescription was negligent and allowed her to acquire an office supply of a non-FDA approved medication. But Dr. Bhambhani's ordering of compounded steroids alone caused no harm to Brenda Rozek. Nor could it; it was on a shelf. Had Plaintiffs only alleged that it was negligent for Dr. Bhambhani to have

_____

[10] Inherent in finding that the purchase beginning in 2008 was a breach is a finding that it was a breach to purchase MPA from NECC in bulk, which also occurred before NECC's alleged conduct.

purchased compounded medicine from NECC, a directed verdict would have been appropriate as Plaintiffs would not have shown any harm to Brenda Rozek. However, Plaintiffs proved that it was negligent for Dr. Bhambhani to have injected Brenda Rozek with a compounded steroid for which her patient had no need. It was this negligent act that caused Mrs. Rozek's infection and death.

We are not persuaded by appellants' argument that, as a matter of law, Dr. Bhambhani's breach in stocking her office with MPA from NECC could not have caused the harm to Rozek, especially considering that their own expert witness testified that it was one source of the harm. Furthermore, at trial, plaintiffs' counsel told the court that plaintiffs were alleging different theories of breach. In making the case that an intervening cause is inapplicable because plaintiffs alleged a breach at the point of injection, plaintiffs' counsel noted:

> [PLAINTIFFS' COUNSEL]: Your honor, Plaintiffs also allege that Dr. Bhambhani breached the standard of care by injecting Brenda Rozek with the contaminated steroid on August 31st without her informed consent. *That's a separate theory of negligence that we're alleging caused the damages in this case*.

(Emphasis added). And later, co-counsel stated:

> [PLAINTIFFS' COUNSEL]: [Co-counsel] also mentioned that we have *different theories of breach of standard of care*.

(Emphasis added). Both of plaintiffs' counsels' arguments imply that the plaintiffs proffered more than one theory of breach, exhibited by the expert testimony outlined above.

On appeal, appellants repeatedly emphasize defense counsel's inability to present an intervening act between the injection and Rozek's death but disregard that the jury could have found intervening and superseding cause applied to one of the earlier alleged breaches. Appellants' circular logic is further demonstrated in their brief, where they argue

13

that the trial court erred by focusing on the *ordering* of the MPA, thus ignoring plaintiffs' proof that "Dr. Bhambhani was negligent ***not simply in purchasing*** but in injecting the compound. Dr. Bhambhani's ***purchase*** of compound steroid from NECC ***was negligent*** but it was Dr. Bhambhani's decision to inject the compound into Brenda Rozek that caused harm." (Emphasis added). Again, appellants' argument implies that multiple instances of breach were alleged, and there was testimony from plaintiffs' expert to that effect. Appellants further rely on the proposition that the injection can be the only breach because if Dr. Bhambhani purchased the MPA, but never injected Rozek with it, no harm would have come to her. Yet, appellants provide no case law to suggest that the purchase of the MPA could not be the operative breach. We conclude that implicit in the case that plaintiffs presented at trial is that the operative breach was Dr. Bhambhani's *decision* to source MPA from NECC, not the injection.

Returning to our standard of review, we must determine whether there exists a "minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired." *Copsey*, 228 Md. at 119 (quoting *Bazzle*, 426 Md. at 550)). Considering the plaintiffs' theory that it was a breach of the standard of care for Dr. Bhambhani to order MPA from NECC in 2008, and in stocking her office with a supply of MPA from NECC, it easily meets the minimum threshold of evidence needed to establish a *prima facie* case of intervening cause as it is not disputed that this occurred before NECC's conduct. The evidence was supplied by expert witnesses for both sides who testified to the breaches of care and the negligence of NECC. *See Reiss*, 241 Md. App. at 336 (holding that the circuit

court erred in including a question about the negligence of non-parties because "no expert witness testified" that the non-parties breached the standard of care, and thus the jury "had no basis to conclude" that the non-parties were negligent). Doctor Dennis Killian, expert for the defense, testified that NECC breached "standards of pharmaceutical practice in making and distributing the MPA at issue[,]" hence providing the requisite minimum threshold of evidence that would allow a jury to rationally conclude that NECC's conduct was an intervening force, and thus generating the issue warranting a jury instruction.

### 2. *Superseding Cause*

Appellants next argue that it was error to instruct the jury on superseding cause because as a matter of law, NECC's conduct could not have been a superseding cause of Rozek's death. Appellants note that whether an intervening force rises to the level of a superseding cause is "generally for the trier of fact to determine." *Banks*, 59 Md. App. at 431. However, appellants contend, it is a question of law "when the evidence presented and the logical inferences deducible therefrom admit of but one conclusion." *Id.* (quoting *Caroline v. Reicher*, 269 Md. 125, 131 (1973)); *see also Troxel v. Iguana Cantina, LLC*, 201 Md. App. 476, 505 (2011) ("Only in cases where reasoning minds cannot differ does proximate cause become a question of law.").

Section 440 of the Restatement (Second) of Torts defines a superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Section 447 further provides:

15

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

  (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

  (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

  (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

The inquiry is one of foreseeability. *See Pittway Corp.*, 409 Md. at 236 ("An intermediary's negligent failure to prevent harm will be a superseding cause when it is so extraordinary as to not have been reasonably foreseeable." (quoting our opinion below, *Collins v. Li*, 176 Md. App. 502, 580–81 (2007))); *Sindler v. Litman*, 166 Md. App. 90, 115 (2005) ("An intervening force is a superseding cause if the intervening force was not foreseeable at the time of the primary negligence."); MPJI-Cv 19:11 ("If a later event or act could have been reasonably foreseen, the defendant is not excused for responsibility for any injury caused by the defendant's negligence. But if an event or act is so extraordinary that it was not reasonably foreseeable, the defendant's conduct is not a legal cause of the injury."). It follows then that instructing the jury on superseding cause is proper if there was some evidence demonstrating the unforeseeability of NECC's intervening conduct. We turn again to the record.

  In her testimony, Dr. Bhambhani testified to the following:

16

[DEFENDANTS' COUNSEL]: So, Dr. Bhambhani, let me ask you this: In your view as of August of 2012, did you consider the preservative-free MPA that you were using to be something that presented any greater risk to the patient than any other steroid that you would use?

[DR. BHAMBHANI]: *No.* Based on my previous experience, my training, my personal use, and everything else I've mentioned so far*,* if anything, I was going with that this was, if anything, safer than something with preservative.

[DEFENDANTS' COUNSEL]: And as of August of 2012, had your experience with the preservative-free MPA you had gotten from NECC been one where you had had satisfactory experience?

[DR. BHAMBHANI]: Yes. All the way from 2003 until this in 2012 I had been using the preservative-free MPA and not had any complications other than, like I mentioned, the low rate of the systemic side effects that are expected with the steroids.

(Emphasis added). Later, defense expert, Dr. Laxmaiah Manchikanti, testified to the standard of care regarding sourcing from compounding pharmacies, the widespread use and acceptance of compounded steroids, and his use own use of compounded drugs from NECC:

[DEFENDANTS' COUNSEL]: And in what year did you begin using compounded medication?

[DR. MANCHIKANTI]: I think it was around 2002 or 2003.

. . .

[DEFENDANTS' COUNSEL]: As of 2012, do you have an opinion you hold to a reasonable degree of medical probability whether the standard of care permitted interventional pain physicians to use compounded steroids for epidural injections?

[DR. MANCHIKANTI]: Yes.

. . .

17

[DEFENDANTS' COUNSEL]: Did there come a point in time after you started using compounded steroids in 2002 or '03 that you began using NECC for compounded steroids?

[DR. MANCHIKANTI]: I think we started using them in 2007 or 2008.

. . .

[DEFENDANTS' COUNSEL]: Based upon your knowledge of interventional pain physicians across this country, was Dr. Bhambhani the only pain medicine physician using preservative-free steroids from a compounding pharmacy?

[DR. MANCHIKANTI]: Oh, no. Many of the physicians used -- a large proportion of our membership and many of the doctors I know personally have used them.

. . .

[DEFENDANTS' COUNSEL]: To your understanding, how widespread was the practice of using preservative-free steroids for spine injections as of 2012?

[DR. MANCHIKANTI]: It was very widespread.

. . .

[DEFENDANTS' COUNSEL]: And up until the outbreak in 2012, had it been your experience that the medications that you had received from [NECC] and, prior to that, other compounding pharmacies were effective, safe, and sterile for epidural injection?

[DR. MANCHIKANTI]: That's correct.

And finally, defense expert Sheldon Bradshaw, an attorney who specializes in the Food and Drug Administration, testified as to the criminal conduct of Barry Cadden and Glenn Chinn, NECC's president and head pharmacist. Mr. Bradshaw testified that in "extraordinary cases where the conduct is fraudulent or intentional, the FDA has the

18

authority to go after companies and individuals and charge them criminally." Speaking to

NECC's case, Mr. Bradshaw testified:

> After the investigation, the FDA determined that this wasn't sort of the run of the mill, you know, sort of negligent someone made a mistake, someone forgot to do something but that this was sort of a corrupt company and they were intentionally engaged in bad actions.
>
> . . .
>
> The findings of the government were these were all intentional acts designed to defraud patients, physicians, and the government. And, in fact, they were *so extraordinary* they were actually brought – identified the company as engaged in racketeering. . . . They were sort of a company that was proactively engaged in fraud and in intentional acts to allow – knowingly allow adulterated[11] and misbranded drugs to go to physicians and the patients.

(Emphasis added). Mr. Bradshaw further told the jury that for their criminal conduct,

Cadden was sentenced to 14 years in prison, and Chinn was sentenced to eight years,

although he was recently resentenced. Notably, a consideration "of importance in

determining whether an intervening force is a superseding cause of harm to another" is the

"degree of culpability of a wrongful act of a third person which sets the intervening force

in motion." Restatement (Second) of Torts § 442(f). We can hardly think of a wrongful act

with a higher degree of culpability than knowingly sending adulterated drugs to

unsuspecting physicians and patients, leading to the deaths of dozens of people.

In light of the testimony from Dr. Bhambhani, Dr. Manchikanti, and Mr. Bradshaw,

we hold that the minimum threshold requirement to allow a jury question to be generated

---

[11] Mr. Bradshaw explained that "adulterated" can refer to when a product is manufactured "under unsanitary conditions or" "not in compliance with good manufacturing practices."

was easily met, and therefore the trial court did not abuse its discretion in instructing the jury on superseding cause and including it on the verdict sheet.

In their brief (and at oral argument) appellants insist that it was not extraordinary or unusual, and was completely foreseeable, that NECC, being a compounding pharmacy, would manufacture and ship compromised drugs. But, as appellants acknowledge, whether an intervening force rises to the level of a superseding cause is generally a question for the jury. *Banks*, 59 Md. App. at 431. Here, the evidence presented, including competing testimony from the defense's expert, and from Dr. Bhambhani herself, admits more than one reasonable conclusion; namely, whether or not it was foreseeable that sourcing MPA from NECC would result in a patient's death.

Appellants cite *Troxel v. Iguana Cantina, LLC* for the proposition that a third party's intervening negligence is not a superseding cause if it falls "within the scope of the risk created by the [defendant]'s conduct." 201 Md. App. at 507–09 (applying the analysis from a Supreme Court of Connecticut case to show that a jury could have found the defendant guilty because the harm "was the exact type of risk that [the defendant] was charged with a duty to protect against"). Importantly, however, is that in *Troxel*, we reversed a grant of summary judgment, holding that "a jury could reasonably conclude that Iguana Cantina's failure to provide adequate security was a substantial factor in bringing about Troxel's injuries. Reasoning minds could disagree on whether Troxel's injuries could have been prevented if appellees" had taken preventive measures. *Id.* at 508–09. Reviewing a trial court's grant of summary judgment requires a much different standard than reviewing a trial court's decision to include a jury instruction. And indeed, the reasoning of our opinion

in *Troxel* undergirds our reasoning here. We hold that there was a triable issue generated because a jury could reasonably conclude that NECC's conduct was unforeseeable and a superseding cause. We thus affirm the trial court's ruling.

**THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY IS AFFIRMED. APPELLANT TO PAY THE COSTS.**